RUSSELL *v.* PERE MARQUETTE RAILWAY CO.

1. MASTER AND SERVANT—NEGLIGENCE—PERSONAL INJURIES—FEDERAL EMPLOYERS' LIABILITY ACT—DIRECTED VERDICT.

   In an action under the Federal employers' liability act by an employee on a car ferry for injuries received in a fall over a jackscrew left by fellow employees in a passageway on the deck of the ferry, along which plaintiff had to pass early in the morning, it cannot be said, as matter of law, that defendant was not guilty of negligence, where there was testimony that it was not customary to leave the jackscrews, which were in frequent use, lying in the passageways.

2. SAME—ASSUMPTION OF RISK.

   If it was not customary to leave jackscrews lying in the passageways, it cannot be said that plaintiff assumed the risk, under said act.

3. SAME—CONTRIBUTORY NEGLIGENCE.

   The question of plaintiff's contributory negligence, *held*, under the evidence, for the jury.

4. SAME—NEGLIGENCE—ASSUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE.

   Where there was some testimony of lack of light on the ferry, the trial judge properly held that, if there was any negligence in this respect, plaintiff assumed the risk, and properly allowed the jury to consider it only with reference to plaintiff's contributory negligence.

5. SAME—DAMAGES—COMPARATIVE NEGLIGENCE.

   An instruction that if plaintiff was guilty of contributory negligence, then his damages should be diminished in proportion to the amount of negligence attributable to him, was correct, under said statute.

6. SAME—WEIGHT OF EVIDENCE.

   Verdict in favor of plaintiff *held*, not against the great weight of the evidence.

7. TRIAL—MISCONDUCT OF JUROR—SETTING ASIDE VERDICT.

   Not every irregularity which would subject a juror to censure should overturn the verdict, but in order to authorize the

On applicability of Federal Employers' Liability Act to injury to seamen, see annotation in L. R. A. 1918C, 474.

setting aside of a verdict on account of misconduct of the jury, it must appear that such misconduct may have had an influence upon the final result, and caused injury to the complaining party.

8. Same—Misconduct of Juror Not Prejudicial.

Misconduct of a juror in talking about the case, where he did all the talking, the parties to the suit were not concerned in it, and it does not appear that it influenced the final result, or that the party complaining was injured, *held*, not sufficient cause to set aside the verdict.

Error to Saginaw; Martin (William H.), J. Submitted October 5, 1928. (Docket No. 103, Calendar No. 33,647.) Decided February 1, 1929.

Case by Joseph N. Russell against the Pere Marquette Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*W. K. Williams, John C. Shields,* and *Weadock & Weadock,* for appellant.

*Purcell & Picard,* for appellee.

Clark, J. Plaintiff was employed by defendant as a coal passer on its car ferry No. 18, plying between Ludington, Michigan, and Manitowoc and Milwaukee, Wisconsin. While on duty on May 26, 1923, he fell and suffered serious injury. He brought this suit under the Federal employers' liability act, made applicable to seamen by the Jones act, section 33 of the act of June 5, 1920, chap. 250, 41 U. S. Stat. p. 1007 (U. S. C. A. tit. 46, § 688), and had verdict and judgment. Defendant brings error.

On the main or car deck are four tracks, used to carry freight cars. The boat when loaded has four strings of cars on the deck, two on the right of the

center of the deck, and two on the left. The cars must be fastened to prevent damage or loss at sea. On each side of each track is a dead rail, set nearly three feet from the track rail. To hold rigid the bodies of the cars, jackscrews are set between the dead rails and the sills of the cars, ordinarily four jackscrews to each car, although more are set if seas become unusually rough. The jackscrews are inclined from the dead rails toward the cars at an angle of nearly 45 degrees. When the ship is nearing dock in calm weather, or when in harbor or at dock in rough weather, the jacks are unscrewed, and, according to some witnesses, are permitted to lie on deck where they fall so that they will be convenient for use when another deck load of cars is taken on. A jackscrew weighs nearly 150 pounds, and is three feet long. Between the first dead rail on the right of the center line of the main deck and the first dead rail on the left is a way, spoken of by some witnesses as a passageway, commonly used as such by the crew. It is nearly six feet wide, and extends from the stern of the ship nearly to the bow. In it are hatches for passing to and from the deck below the main deck and a stairway to go to the upper or cabin deck. The mess rooms are on the cabin deck. The sleeping quarters of the coal passers and firemen are below the main deck on the flicker deck, in what is called the flicker hole. The flicker hatch is close to 20 feet from the foot of the stairway leading to the cabin deck. At the time in question, the ship was at dock in Ludington, and was being loaded. Two strings of cars had been placed on the inner tracks. Plaintiff was called at 2:45 a. m. to go on duty at 3:15. To get his morning meal in the mess room, he left the flicker hole, came up the flicker hatch, started toward the stairway leading to the cabin deck, stumbled over a jackscrew lying in the

passageway, and fell. He fell either close to the flicker hatch or nearly 9 or 10 feet away from it, according to the varying testimony of witnesses. He testified that during the period of his employment, April 4, 1923, to May 26, 1923, he had walked in the passageway several times daily, and had never before seen a jackscrew lying in it; that during that time the jackscrews, when not in use, lay between the dead rails and the track rails on either side of the passageway.

There is no evidence of rule in this regard except the captain testified that he had given verbal orders against leaving jackscrews within some 2 or 3 or 4 feet of the foot of the stairway and of the hatch.

Defendant's contentions are:

1. That there is against it no evidence of negligence. Plaintiff's testimony is to the effect that it was the unvarying practice on that ship, during the period of his employment, nearly two months, not to leave jackscrews in the passageway. If that is true, the act of the employee or employees in leaving the jackscrew in question in the passageway was negligent, for which, under the law, the defendant is liable. *Chapman* v. *Express Co.*, 192 Mich. 654, controls this question.

2. That plaintiff assumed the risk of injury in coming in contact with a jackscrew on the car deck. That would be true probably if the facts are as contended by defendant, that during all the period of plaintiff's employment jackscrews, when not in use, did lie in the passageway, and not so if the facts are as contended by plaintiff. Of this it is said in the *Chapman Case:*

"The Federal authorities seem to hold that in order to make the negligence of the fellow-servant one of the assumed risks under this act, the injured employee must actually know of the fact of the negli-

gence of his fellow-servant, or that such negligence was so customary that he would be charged with knowledge thereof.''

3. That plaintiff's injury was the result of his own negligence. Plaintiff's testimony, read in its entirety, is to the effect that he saw the jackscrew too late to avoid stumbling, although he attempted to avoid it. The question of his negligence was for the jury. There was some testimony, not much, of lack of light, due chiefly to location of electric lights; that cars and parts of the ship itself produced shadows in the passageway. The jury was not permitted to consider this as regards negligence of defendant, on the theory that if there was any negligence in this respect plaintiff assumed the risk, but the jury was instructed that it might consider such testimony with reference to contributory negligence of plaintiff. The court was not in error. The jury was instructed, correctly, in substance, that if plaintiff was guilty of contributory negligence, then his damages should be diminished in proportion to the amount of negligence attributable to him. *Sumner* v. *Railroad Co.*, 235 Mich. 293.

4. That the verdict is against the great weight of the evidence. There is no question that plaintiff stumbled over the jackscrew, fell, and suffered serious injury. The important question of fact is whether or not it was the practice to leave jackscrews in the passageway. Plaintiff's testimony that jackscrews had not been left or placed in the passageway during his employment, except on the occasion of his fall, finds support in other testimony to the effect that when the jackscrews were released they were permitted to fall and to lie where they fell. Inclined, as has been stated, they would fall away from the passageway, and between the track

and the dead rail. The trial court was right in holding the verdict to be not against the great weight of the evidence.

5. That defendant's motion for mistrial ought to have been granted because of misconduct of a juror. Toward the close of taking testimony, counsel for defendant made the motion, supported by an affidavit, that on that day in a railway waiting room at Birch Run, in the county, one of the jurors returning to court in the presence of four or five persons, quoting:

"This man then began talking about sitting on the jury in Saginaw, and various cases he had heard, and among them was the case on which he was sitting at present. This case involved injury to a Pere Marquette employee on a car ferry. He stated that it had been his opinion when the case started that this employee was trying to put something over on the company, but from the contradictory testimony of the doctors and testimony of the various employees on the boat, that he thought there was something to it, but he thought that there would be a disagreement of the jury because of a woman juror. This woman juror having had a great deal to do with the doctors and would accept the testimony of a doctor against the opinion of every other juror."

In denying the motion, the trial judge said:

"The most that can be said is that the juror indulged in a short conversation with some persons during the trial at a place where he happened to be waiting for a street car, which was casual and indefinite in character, and in no way prejudiced the defendant, or committed the juror to any particular verdict in the case.

"It is the opinion of the court that litigation in process of trial should not be abandoned for slight reasons, and that the verdict of the jury should not

be upset upon alleged misconduct of a juror during the trial, except where it clearly appears that there was such a prejudice as would cause an injustice to be done. The motion is therefore denied, for this cause."

It does not appear that any one talked to the juror. He did all the talking. Nor was either party to this suit concerned in it. The juror was guilty of misconduct. But, as stated in Abbott's Civil Jury Trials (4th Ed.), 788:

"Not every irregularity which would subject a juror to censure should overturn the verdict. In order to authorize the setting aside of a verdict on account of misconduct of the jury, it must appear that such misconduct may have had an influence upon the final result, and caused injury to the complaining party."

And in 29 Cyc. p. 800:

"While the fact that a juror made remarks about the case to persons not jurors may properly be considered in connection with any other evidence of misconduct, it is not of itself ground for a new trial, where such remarks did not indicate bias or corruption and the person addressed said nothing prejudicial in reply."

And in 16 R. C. L. p. 312:

"Misconduct must, however, be such as to warrant the belief that the fairness and propriety of the trial have been impaired; that injury has resulted therefrom; and generally, where prejudice has resulted to an unsuccessful party from the misconduct of the jury, it must appear that he was not concerned in such misconduct. Impliedly, a verdict should not be set aside for every trifling error of law by the court, or for every trifling misconduct of a juror, which occurs without the fault of the pre-

vailing party; but it should be whenever the error or misconduct renders it reasonably doubtful whether the verdict has been legitimately procured."

See *Cooper* v. *Carr,* 161 Mich. 405. *Stockwell* v. *Railway Co.,* 43 Iowa, 470, is closely in point.

It does not appear that defendant suffered injury by the misconduct, that it influenced the final result. Bias or prejudice against defendant on the part of the juror is not indicated. The trial judge thought the misconduct not sufficient to vitiate the verdict. We are constrained to agree with him.

This opinion must come to an end. Several other assignments are discussed by counsel, but, fully considered, present no reversible error.

Judgment affirmed.

NORTH, C. J., and FEAD, FELLOWS, McDONALD, POTTER, and SHARPE, JJ., concurred.

WIEST, J. *(for affirmance conditionally).* Considering the age of plaintiff, his expectancy of life, former occupation and earnings, the nature and extent of his injuries and lessened ability to work, I think the verdict for $7,000 excessive, and unless reduced by remittitur within 20 days to $5,000 the judgment should be reversed and a new trial granted, with costs to defendant.