## AFIF HADDAD

### V.

## COMMONWEALTH OF VIRGINIA

Record No. 840150

Decided April 26, 1985, at Richmond

Present: All the Justices

*Peter D. Greenspun (Klein & Greenspun,* on briefs), for appellant.

*W. Mark Dunn, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this criminal appeal, we determine whether the trial court abused its discretion in refusing to declare a mistrial on motion of the defendant as the result of comments made by a juror to third parties during a recess.

In a one-day trial, defendant Afif I. Haddad was convicted of first-degree murder for the homicide of his estranged wife. He also was convicted of using a firearm in the commission of a felony. Defendant appeals from the final judgment which sentenced him to terms of 30 years and one year respectively for the murder and the firearms charge.

The issue on appeal arose in the following manner. As the trial began, the jury was selected in routine fashion and the usual questions were asked members of the venire on *voir dire.* For example, the prospective jurors indicated they had not formed any opinion about the case, had no bias or prejudice concerning the matter, and knew of no reason why they could not render a fair and impartial verdict based upon the law and the evidence. After the jury had been selected, the trial judge, in preliminary instructions given prior to presentation of the evidence, admonished the jury not to discuss the case with anyone during the trial and to "keep an open mind" until "you go back to the jury room" to decide the case.

In the course of his opening statement, defense counsel told the jury that "in all probability we will present no evidence." Prior to the luncheon recess, seven witnesses had testified for the prosecution. Before declaring the recess, the trial judge told the jury not to "discuss this case during the luncheon break" and not to "remain within the hearing of anyone who is discussing it." During

the afternoon session, two witnesses testified for the Commonwealth. The defendant offered no evidence.

After the luncheon recess, following the testimony of one witness, defense counsel moved for a mistrial because of alleged misconduct of a juror who later became foreman of the jury. Out of the presence of the jury, the trial court received testimony in support of the motion from one witness and interrogated the juror.

Michael Pappis, a local attorney, reported the incident to defense counsel. Pappis testified that he was talking with another attorney "over lunch," at a location not identified in the record. The attorneys were discussing a criminal proceeding in which Pappis had participated earlier that day. Pappis said to the other lawyer that "the person got off," to which the other attorney said "sort of kiddlingly, '[W]ell, it looks like another one walks the street. . . .'" Pappis testified, "at that point a gentleman [later identified as juror Donald Hamlin] sitting . . . directly across from me . . . looked over at me and said, '[D]oesn't that make you feel guilty when you get somebody off on a criminal charge and then you know he is allowed to walk the streets?'" Pappis testified he responded, "[N]o, it doesn't at all . . . I am just doing my job." According to Pappis, the individual "stated something about 'just as long as you get paid, right . . . .'" Pappis then said to the individual, "[Y]eah . . . if they get off, they get off," to which the individual responded: "[W]ell, my client is not going to get off . . . ." At that point, according to the testimony, the individual "stood up and walked away" from the lunch table.[1]

Juror Hamlin, identified by his attire by Pappis, testified under oath that he recalled having a conversation during lunch. He remembered sitting opposite two attorneys who, according to the juror, "were discussing . . . a case or something they are in and somebody liked doing something." The juror testified: "I was just discussing things with them and I said 'that's not so fortunate,' you know. I said—I just said 'my client is not so fortunate,' you know, and I don't know if they thought I was a lawyer or what, but I wasn't relating to this, but I just, in general, [spoke] of things that's been going on."

The trial judge then said to Hamlin, "What I need to know is what you meant by that statement about 'my client is not going to

[1] Apparently, the jurors had not been provided with badges or buttons for their clothing to identify them as jurors.

go free.' " The juror responded: "I didn't say that." He testified, "I wasn't trying to pinpoint anybody, but I just said, '[D]o you feel guilty about letting people back on the street. . . .' " The juror told the court that he said: "I don't think my client is going to be as fortunate." The juror, despite close questioning by the trial judge, never gave an explanation for the meaning of his statements about his "client." At the conclusion of interrogation, the juror repeated that his conversation did not refer to the Haddad case. In addition, Hamlin answered affirmatively the trial judge's inquiries whether he could give both parties a fair and impartial trial as well as refrain from prejudging the defendant's guilt until the case was completed.

In the course of ruling on the defense motion, the trial judge stated the juror's comments to the court showed Hamlin "recognized too late that the consequences of his actions were very serious." The judge said: "I don't know what he meant by them, but I believe that he is going to be fair and impartial based on what I heard." The court concluded: "He didn't impress me to be a devious individual, so I will allow the trial to go forward and I will deny the motion for a mistrial."

On appeal, the defendant contends the court below erred in refusing to declare a mistrial when a "tainted" juror was discovered during the course of the proceedings. The defendant argues the juror violated the trial court's instructions on impartiality, fairness, prejudgment of the issues, and discussion of the case with third persons. Defendant says that Hamlin obviously was referring specifically to the present case when he spoke of his "client" and that his comments made to the attorneys demonstrated he improperly had prejudged defendant's guilt. Defendant argues: "Any other interpretation of the conversation . . . stretches credibility and puts full faith [in the fact] that the juror was fully able to abide by [the trial judge's] admonitions." Actually, defendant claims he was denied his constitutional right to trial by an impartial jury.

The Attorney General argues the trial court properly refused to declare a mistrial after finding that juror Hamlin was fair and impartial. Noting that a trial judge's determination of such issues is entitled to great weight on appeal, the Commonwealth contends the denial of the motion for a mistrial cannot be characterized as manifestly wrong or an abuse of discretion. The Attorney General points out that a juror inevitably forms impressions and opinions

on the outcome of the case as he hears each bit of evidence. These views are subject to change throughout the trial. The Commonwealth says that formation of such an "impression" is especially probable when the defendant has forewarned the jury in opening statement that he will not rebut the prosecution's evidence. Here, the argument continues, an expression of opinion by a juror on the merits of the case, based only on testimony lawfully presented during the trial, does not indicate improper bias or prejudice. We do not agree.

At the outset, we emphasize the obvious. We are not dealing with qualification of veniremen upon *voir dire*. Thus, the cases on that subject relied on by the parties are of slight assistance. Instead, we consider alleged impropriety that arose during the course of the trial after the jurors all had been found fully qualified to serve. There is no question that when the trial began the jury, including Hamlin, was "impartial," within the meaning of that term in the provisions of the Federal and State Constitutions guaranteeing defendant a right to an "impartial jury." U.S. Const. amends. VI and XIV; Va. Const. art. 1, § 8. The jurors stood "indifferent in the cause," within the meaning of Code § 8.01-358. *See* Rule 3A:14. Consequently, we must determine whether, during the course of the trial, the impartiality of any of the 12 jurors was affected, taking into account Hamlin's statements and expressions of opinion made to third parties.

To begin the analysis, we conclude that Hamlin was referring to the Haddad trial in his lunch-table comments and that this action constituted juror misconduct. The trial court made no finding contrary to the former conclusion and the Attorney General does not seriously dispute the latter. The question then becomes whether juror misconduct in the form of expressions of opinion made by a juror to third persons during the trial proceedings should result in a mistrial.

The parties have cited no Virginia case directly on point, and we have found none. Courts of other jurisdictions are not unanimous in their treatment of the problem.[2] Some courts have adopted a *per se* rule. In California and West Virginia, for exam-

---

[2] In most of the reported cases, the issue has arisen on a motion for a new trial when the trial court, after the verdict, can investigate and determine whether the outcome has been affected by the misconduct. Here, no post-trial motion was made by defendant reasserting the grounds of the motion for a mistrial. Thus, our perspective procedurally is a bit different from that in most of the cases dealing with the issue.

ple, when it is shown that juror misconduct has occurred during the course of the trial, a presumption arises against the purity of the verdict, and unless there is evidence showing that no prejudice actually resulted from the misconduct, the verdict will be set aside. The burden of producing such evidence is upon the party seeking to sustain the verdict. *People v. Pierce*, 24 Cal.3d 199, 208, 155 Cal.Rptr. 657, 661, 595 P.2d 91, 95 (1979); *Rowe v. Shenandoah Pulp Co.*, 42 W.Va. 551, 559, 26 S.E. 320, 323 (1896).

In the majority of jurisdictions, however, courts hold that a mistrial will not be declared automatically upon a showing of juror misconduct, but that the trial judge, in the exercise of a sound discretion, must determine whether remarks made about the case by a juror to persons not jurors demonstrate that prejudice might result. The burden to establish this probability of prejudice is upon the party moving for a mistrial. This view is based upon the universal rule that fraud will not be presumed and upon the reluctance to presume prejudicial misconduct. *See, e.g., Hood v. Kelly*, 285 Ala. 337, 338, 231 So.2d 901, 903 (1970); *State v. Allen*, 4 Kan. App.2d 534, 538, 609 P.2d 219, 223 (1980); *State v. Day*, 414 So.2d 349, 350 (La. 1982); *State v. Mimmovich*, 284 A.2d 282, 287 (Me. 1971); *People v. Provost*, 77 Mich.App. 667, 672, 259 N.W.2d 183, 185-86 (1977), *rev'd on other grounds*, 403 Mich. 843, 271 N.W.2d 777 (1978); *Russell v. Pere Marquette Ry. Co.*, 245 Mich. 624, 629-30, 223 N.W. 230, 232, *cert. denied*, 279 U.S. 864 (1929); *McGuire v. Amyx*, 317 Mo. 1061, 1077, 297 S.W. 968, 975 (1927); *Tate v. Rommel*, 3 Wash.App. 933, 937-38, 478 P.2d 242, 245 (1970). *See also* Annot. 64 A.L.R.2d 158, 179-80.

We adopt the majority rule. There is no material dispute about the juror's lunchtime utterances to the attorneys. Hamlin expressed a conviction that an individual who may be instrumental in obtaining the release of a person charged with a crime should "feel guilty" that the accused is "allowed to walk the streets." The juror charged attorneys, whose clients are released, of having no remorse "as long as [the lawyers] get paid." Hamlin opined that his "client," an obvious reference to defendant Haddad, either was not going to be "as fortunate" or was "not going to get off."

Viewed as a whole, we conclude that the evidence offered in support of the motion for the mistrial was sufficient to establish a

probability of prejudice to the accused and that the trial court abused its discretion in denying the motion. The facts showed that Hamlin probably was impartial no longer, even though he promised the court that he could maintain an open mind on the issues until the remainder of the case was completed. *Cf. Brittle* v. *Commonwealth*, 222 Va. 518, 522-23, 281 S.E.2d 889, 890 (1981) (review by jury of unadmitted photographic exhibits held reversible error even though jurors said they were not prejudiced by examination of the pictures). The facts developed brought into question the fairness of the trial and disclosed circumstances that would tend to impair public confidence in trial by jury.

Consequently, the judgment of conviction will be set aside and the case remanded for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*

RUSSELL, J., dissenting:

I respect the concern of the majority that nothing should be countenanced which would tend to impair public confidence in trial by jury, but cannot agree that the trial court's ruling in this case amounted to an abuse of discretion. We have repeatedly held that a trial judge must be given wide discretion in interpreting the responses of veniremen to *voir dire* questioning because of the judge's unique opportunity to weigh matters such as tone of voice, gestures, and facial expressions, which supplement the written record.

> As fact-finder, the trial court must weigh the meaning of the answers given in light of the phrasing of the questions posed, the inflections, tone, and tenor of the dialogue, and the general demeanor of the prospective juror. We are aware that, while the words employed may, when transcribed and read in retrospect, appear ambivalent, the judge who heard them uttered was uniquely positioned to assess their ultimate import.

*Smith* v. *Commonwealth*, 219 Va. 455, 464-65, 248 S.E.2d 135, 141 (1978), *cert. denied*, 441 U.S. 967 (1979).

In *LeVasseur* v. *Commonwealth*, 225 Va. 564, 304 S.E.2d 644 (1983), *cert. denied*, 464 U.S. 1063 (1984), we found no abuse of

discretion when the trial court sustained a challenge to a venireman because of ambivalent answers to *Witherspoon* questions, observing that we could neither see nor hear the venireman, and that the trial court might properly base its ruling on "factors beyond the printed record." *Id.* at 584, 304 S.E.2d at 655.

Here, the trial judge questioned the juror carefully, weighed his responses, and concluded that the juror was not a "devious individual," but one who would be "fair and impartial based on what I heard." Because of an appellate court's obvious inability to weigh the often subtle and unrecorded factors which a trial judge must necessarily consider in reaching such a decision, I would accord it a high degree of deference.

The majority concludes that cases involving the qualifications of veniremen on *voir dire* are of "slight assistance," and that different, apparently more liberal, rules should apply when a challenge based on alleged juror misconduct is made during an on-going trial. I can see no reason for such a distinction. In both circumstances, someone must decide whether the challenge to a juror should be sustained. In both circumstances, the trial judge on the scene is in a far better position to make the decision than is an appellate court reading a cold record. But a successful challenge to a venireman at *voir dire* can be remedied by a prompt replacement, while a successful challenge to a juror during trial incurs the far more serious consequence of a mistrial. Further, there is no presumption, until *voir dire* has been completed, that the veniremen "stand indifferent in the cause." During the course of trial, however, the jurors have already been found free of exception and are bound to impartiality by their oath. A party challenging a juror's impartiality during trial should be required to carry a heavier burden than one making a challenge at *voir dire*.

For these reasons, I think a challenge to a juror's impartiality during trial should be weighed by the court with more, rather than with less, caution than a challenge made to a venireman at *voir dire*. There is, therefore, even stronger reason to defer to the discretionary judgment of the trial court in this case than in our cases involving challenges at *voir dire*. Accordingly, I would affirm.