COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Baker, Benton, Coleman,
     Willis, Elder, Bray, Fitzpatrick, Annunziata and
     Overton
Argued at Richmond, Virginia


JAMES LLOYD JENKINS
                                          OPINION BY
v.        Record No. 0371-94-2        JUDGE LARRY G. ELDER
                                         JUNE 18, 1996
COMMONWEALTH OF VIRGINIA


                     UPON A REHEARING EN BANC

          Michael Morchower (Lee W. Kilduff; Morchower,
          Luxton & Whaley, on briefs), for appellant.

          Eugene Murphy, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          briefs), for appellee.



     On December 9, 1993, a jury convicted James Lloyd Jenkins

(appellant) of aggravated sexual battery, in violation of Code

§ 18.2-67.3.  On appeal to this Court, appellant contended:

(1) that juror misconduct violated his constitutional right to a

fair and impartial trial; (2) that the trial court erred in

allowing expert testimony on an ultimate fact in issue; (3) that

the trial court erred in allowing the expert witness to testify

to a hearsay statement made by the sexually abused child; and

(4) that the evidence was insufficient to prove his conviction.

     In Jenkins v. Commonwealth, 21 Va. App. 222, 463 S.E.2d 330

(1995), a divided panel of this Court reversed appellant's

conviction and remanded the case.  The majority held that the

trial court erred in (1) allowing the expert to testify to an

ultimate fact in issue, and (2) in allowing the expert to testify

to a hearsay statement of the child. The opinion did not address the other contested issues. The third judge, although concurring that the trial court erred in allowing the expert to testify to an ultimate fact in issue, dissented with respect to the hearsay issue, opining that the trial court properly admitted the child's statement made during treatment.

We granted rehearing en banc, and upon rehearing, we affirm appellant's conviction. We hold: (1) that the trial court did not violate appellant's constitutional right to a fair and impartial trial when it refused to dismiss a juror on the grounds of juror misconduct; (2) that the trial court erred in allowing expert testimony on an ultimate fact in issue in the case but that such error was harmless; (3) that the trial court did not err in allowing the expert witness to testify to the child's statement made during treatment; and (4) that the evidence sufficiently proved appellant's conviction.

I.

FACTS

The evidence proved that the victim, a male child born on February 26, 1990, was cared for by his grandparents during the weekdays while his parents worked. Appellant, the child's uncle, often visited the child's grandparents when the child was present. The indictment charged that appellant committed aggravated sexual battery on the child during the period September 1992 through March 1993.

2

On April 14, 1993, a Youth Services Unit investigator with the Henrico County Police Department met with appellant. Appellant first denied any sexual contact with the child but then admitted to one incident with the child, which occurred in approximately February 1993. The investigator testified as to what appellant told him:

> He said that he was sitting in the living room watching TV, and that [the child] was sitting in his lap, leaning against his chest, and he said that he began to start having sexual fantasies as to how [the child] would be when he got older and more mature. He said that he put his hand on [the child's] penis from over top his clothing and held it there and touched him there for about a minute. He said while doing this, he was having sexual thoughts about having oral sex with [the child] if he were older.

Appellant told the investigator that during this incident his penis became semi-erect because "he just wanted somebody to love and he was real emotional during this time and actually cried for a while." Appellant also related this incident in a written statement.

During the Commonwealth's case-in-chief, a licensed clinical psychologist testified that he conducted ten counseling sessions with the child, beginning on March 31, 1993. During direct examination, the following exchange occurred between the Commonwealth's Attorney and the psychologist:

> Q:    . . . After these sessions, Sir, or some time during these sessions, were you able to form an opinion to a reasonable degree of certainty in your expertise as to whether [the child] was suffering from any psychological disorder?

3

A:   Yes, Ma'am.

Q:   And what opinion is that, Sir?

A:   That [the child] suffers from an adjustment
     disorder with mixed emotional--mixed--features of
     emotion and conduct.

Q:   Do you have an opinion to a reasonable degree of
     certainty, in your expertise, what adjustment
     disorder--why he had suffered from this adjustment
     disorder, Sir?

A:   An adjustment disorder is a persistent or unusual
     reaction to some identifiable stress.

Q:   And in this case, what--what opinion do you have
     as to that identifiable stress?

A:   That he had been sexually abused.

The psychologist also described the methods that he had used
to form his opinion, including interviews with and observations
of the child.  The psychologist testified, over defense counsel's
objection, that on one occasion the child told him that he "had
been sexed" and made corresponding body movements to describe
what being "sexed" meant.  When asked where he had been "sexed,"
the child pointed to his groin area.  The psychologist also
testified that, on another occasion, the child used two
anatomically correct male dolls to demonstrate a sexual act.

After the presentation of evidence, one of the jurors
notified the trial court that he had worked with appellant ten
years earlier.  Although the juror did not realize this fact
before or during much of the trial, the juror told the trial
court that his memory was triggered when appellant's father
testified.  The trial court questioned the juror in the following

4

manner:

Court: Would [your prior relationship with appellant] affect you in any way in being able to reach a decision in this case?

Juror: Um, honestly I already had a decision made--

Court: Sir.

Juror: This came up, so I guess not. You know, it shouldn't really affect my decision.

Court: You haven't reached a decision before the case was tried--had you reached a decision before the case was tried?

Juror: I mean, I had my opinions, yeah. You know, while going through it, and I just realized it right before the father came up here. That's when it struck me.

Appellant: We'd move for a mistrial, Your Honor.

Court: Can you--the last--I don't want to lead you, Sir, but when you came in here this morning, I asked you--

Juror: When I came here--right, when I came in here this morning, I had no clue.

Court: You had--did you know anything about this case, in any fashion?

Juror: No. None whatsoever.

Court: Now I asked you this morning could you determine the evidence, from what you heard here in the courtroom, apply it to the law as I instruct you that it is, and we have not told you what the law is, and reach a decision. You recall that?

Juror: Yes, Sir.

Court: I asked you--told you you shall decide no issue in this case until the matter is submitted to you from your deliberation under the instructions of the Court. Do you recall that?

5

```
Juror:      Yes, Sir.

Court:      Have you decided any issue in the case, or is
            your mind open?

Juror:      No.  I'm just saying I have taken in
            everything, you know, I'm just weighing and
            balancing in my own head.

Court:      All right, Sir.  Well do you, do you or do
            you not?  Just tell me.  Is your mind open?
            Can you go in there and listen to your
            jurors, discuss what the evidence is?

Juror:      Yeah.  Yeah.  But I knew that, you know, if I
            knew anybody, I should not be in here, and I
            just realized.  I thought I should say
            something.
```

The Commonwealth's Attorney also asked the juror, "[a]nd the fact that you may have known him, would that in any way cause you not to be able to render a fair and impartial verdict, based solely on the evidence that you've heard and the law that you're going to read and hear by the Court?"  The juror responded, "[n]one whatsoever."

Upon questioning from appellant's counsel, the juror admitted that he and appellant had had a disagreement over work scheduling when he worked for appellant, causing them to yell at each other.  However, the juror stated that no "hard feelings" remained after the disagreement.  The juror also reiterated to appellant's counsel that he had not formed an opinion as to appellant's guilt or innocence and that he would wait for the trial court's instructions.  Appellant again moved for a mistrial, but the trial court overruled the motion, ruling that

6

the juror indicated he could remain impartial to the cause and that he had not yet made up his mind.

The jury convicted appellant of the offense charged in the indictment. Code § 18.2-67.3(A)(1) states that "[a]n accused shall be guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and . . . [t]he complaining witness is less than thirteen years of age."

## II.

### JUROR MISCONDUCT

As the Commonwealth contends, "the mere fact of juror misconduct does not automatically entitle either litigant to a mistrial." Robertson v. Metropolitan Washington Airport Auth., 249 Va. 72, 76, 452 S.E.2d 845, 847 (1995). "Instead, the trial court, in the exercise of sound discretion, must determine whether such misconduct probably resulted in prejudice. And the burden of establishing that probability is upon the party moving for a mistrial." Id. A trial court's decision that a juror can be fair and impartial is entitled to great weight on review. Watkins v. Commonwealth, 229 Va. 469, 480, 331 S.E.2d 422, 431 (1985), cert. denied, 475 U.S. 1099 (1986).

After hearing all of the evidence, the juror indicated that he had formed an opinion about the case and had reached his tentative decision before recalling that he knew appellant. However, the juror never stated whether he had concluded in his own mind that appellant was guilty or innocent. Moreover, it

7

appears that the juror made these statements to assuage the trial court's fears that he harbored animus towards appellant. In other words, the juror, who had already heard all of the evidence, meant to convey that he had not allowed his prior relationship with appellant to affect his evaluation of the evidence. Upon thorough questioning by the trial court and by both counsel, the juror assured the trial court that he could deliberate and reach a verdict after discussion with his fellow jurors.

The Supreme Court of Virginia has generally "limited findings of prejudicial juror misconduct to activities of jurors that occur <u>outside</u> the jury room." <u>Caterpillar Tractor Co. v. Hulvey</u>, 233 Va. 77, 83, 353 S.E.2d 747, 751 (1987)(holding that juror misconduct was not sufficient to set aside the verdict when one juror told the others that he was a lawyer and opined that the case was "garbage"). <u>Haddad v. Commonwealth</u>, 229 Va. 325, 329 S.E.2d 17 (1985), relied on by appellant, is not directly applicable to this case because it involved juror activity outside of the jury room. In <u>Haddad</u>, a juror made a comment to a third party defense attorney during a break in the trial, stating that the defendant was "not going to get off" and asking the attorney if he felt guilty about helping to free criminal defendants. The trial court thereafter fully questioned the juror about his statements before concluding that the juror could give both parties a fair trial and refrain from prejudging the

8

defendant's guilt.  Id. at 328, 329 S.E.2d at 19.  The Supreme Court stated that juror misconduct occurred and framed the issue for review as "whether juror misconduct in the form of expressions of opinion made by a juror to third persons during the trial proceedings should result in a mistrial."  Id. at 329, 329 S.E.2d at 19-20.  The Court held that a mistrial should have been granted because the defendant proved a probability of prejudice and that the juror was no longer impartial, despite promises to the trial court to the contrary.  Id. at 330-31, 329 S.E.2d at 20.

In this case, the juror never expressed to a third party any animus toward appellant or toward criminal defendants in general.  Furthermore, the juror never stated whether he had concluded that appellant was guilty or innocent.  Thus, appellant's potential prejudgment of the case differs from the juror's prejudgment in Haddad.  We hold that the trial court did not abuse its discretion in declining to declare a mistrial based on juror misconduct.  See Commercial Union Ins. Co. v. Moorefield, 231 Va. 260, 343 S.E.2d 329 (1986).

### III.

### ULTIMATE FACT IN ISSUE

Appellant argues that the trial court erred in allowing the expert to testify that the child had been sexually abused.  We agree but hold that such error was harmless in light of the other evidence adduced at trial.

9

The expert's statement that, in his opinion, the child had been sexually abused was inadmissible under Cartera v. Commonwealth, 219 Va. 516, 248 S.E.2d 784 (1978). In Cartera, the Supreme Court stated the following well-accepted principle: "In any proper case, an expert witness may be permitted to express his opinion upon matters not within common knowledge or experience. Opinion testimony, however, is not admissible 'upon the precise or ultimate fact in issue.'" Id. at 519, 248 S.E.2d at 786 (quoting Webb v. Commonwealth, 204 Va. 24, 33, 129 S.E.2d 22, 29 (1963)). Consistent with the Cartera rule, we hold that the expert's testimony in this case that the child had been sexually abused expressed an opinion on the ultimate fact in issue (i.e., that the charged offense occurred). The psychologist opined not as to what could have been the causative stressor but rather what was the causative stressor.[1] The psychologist's testimony went to the ultimate fact in issue and invaded the jury's province as the fact finder. Cartera, 219 Va. at 519, 248 S.E.2d at 786.

We also hold that the trial court's error in admitting this evidence was harmless. When an element of the crime is fully established by other competent evidence, an error in improperly admitting evidence with respect to that point is harmless. See

---

[1] One of the diagnostic criteria for "adjustment disorder" is a "reaction to an identifiable psychological stressor (or multiple stressors)." DSM-III-R (Diagnostic & Statistical Manual of Mental Disorders 329-30 (3d ed. rev. 1987).

Rozier v. Commonwealth, 219 Va. 525, 528, 248 S.E.2d 789, 791 (1978); Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991)(en banc); Code § 8.01-678.

In this case, the Commonwealth's evidence included testimony from the child's mother of multiple instances of bizarre sexually-oriented behavior by the child. The expert's testimony also showed the child's familiarity with sexual acts. Most probative was appellant's admission that he participated in one sexual episode with the child. The trial court instructed the jurors that sexual abuse had been committed if the evidence showed that appellant had "with the intent to sexually molest, arouse or gratify any person, . . . intentionally touch[ed] the complaining witness' intimate parts or clothing covering such intimate parts." See Code § 18.2-67.10(6).

The facts contained in appellant's confession proved these elements. Appellant confessed that while holding the child on his lap, he began to have sexual fantasies about the child. Appellant admitted that he placed his hand on the child's penis and held it there for a minute, during which time appellant had sexual thoughts about having oral sex with the child when the child was older. Based on these facts, the error in admitting the expert's testimony was harmless. Rodriquez v. Commonwealth, 249 Va. 203, 208, 454 S.E.2d 725, 728 (1995)(holding that in the face of conclusive proof of guilt, any error in admitting an expert's testimony on the ultimate fact in issue was "utterly

11

harmless").

                              IV.

          USE OF CHILD'S STATEMENT MADE TO PSYCHOLOGIST

     Appellant next contends that the trial court erred in
allowing the psychologist, who offered expert testimony, to
testify to the child's hearsay statement that he had been
"sexed."  We hold that the trial court properly admitted this
portion of the psychologist's testimony.

     First, as many other jurisdictions have held, because the
child's statement as made to the expert was not offered for its
truth, the statement did not qualify as hearsay.  The child's
statement that he had been "sexed" conveyed information that
clearly formed the basis for the expert's diagnosis of the
child's adjustment disorder, regardless of its truth or falsity.[2]
 See, e.g., Howle v. PYA/Monarch, Inc., 344 S.E.2d 157 (S.C. Ct.

_____

     [2]  According to 31A Am. Jur. 2d Expert and Opinion Evidence
§ 187 (1989 & Supp. 1996):

          In testifying as an expert on a person's mental
     condition . . . a psychiatrist or psychologist may rely
     on, as one basis for his or her opinion, statements
     made by or conversations held with the party in
     question. . . .  The results of interviews conducted
     necessarily become a part of the expert's opinion.  The
     witness is not expressing a belief as to the truth or
     falsity of the statements, but is merely expressing the
     basis for his or her professional opinion concerning
     the cause of the patient's mental condition.

(Footnotes omitted)(emphasis added).  See also Annotation,
Admissibility of Testimony of Expert, As to Basis of his Opinion,
to Matters Otherwise Excludible as Hearsay--State Cases, 89
A.L.R.4th 456 (1991 & Supp. 1995).

                              12

App. 1986)(holding that a psychiatrist who examined defendant, his patient, after a car accident could testify as to conversations he had with the defendant; such statements were not offered for their truth but for the basis of his diagnosis); Brown v. State, 649 S.W.2d 160 (Tex. Ct. App. 1983)(holding that a physician who examined a child victim shortly after an alleged molestation could relate the child's statements regarding the attack; such statements were admitted to show the basis of the physician's opinion, not for their truth); State v. Wade, 251 S.E.2d 407 (N.C. 1979)(holding that a psychiatrist should have been allowed to testify as to the content of conversations with the defendant, his patient, in order to show the basis for his diagnosis); Dickens v. Adams, 224 S.E.2d 468 (Ga. Ct. App. 1976)(holding that statements made by psychiatrist's patient were not inadmissible as hearsay, as the psychiatrist was not expressing a belief as to the truth or falsity of the statements, but merely expressing the basis of his opinion concerning the cause of the patient's anxiety and depression); Jones v. State, 289 So. 2d 725, 727 (Fla. 1974)(holding that "in general, a statement by an injured or diseased person to a physician as to past matters, although not admissible as evidence of the truth of the facts stated, may be included in the physician's testimony to show the basis for his opinion"); Goldstein v. Sklar, 216 A.2d 298 (Me. 1966)(holding that a physician's testimony to medical history related by a patient is admitted to show the basis for

13

the physician's professional opinion as to the nature of the patient's illness, rather than to show the truth of the matters related by the patient).

In this case, the expert testified that the child suffered from an adjustment disorder with mixed features of emotion and conduct and that an adjustment disorder is a persistent or unusual reaction to some identifiable stressor. The psychologist described the methods he used to form his opinion as to the identifiable stressor, which included interviews with and observations of the child. The psychologist testified that the child told him that he "had been sexed" and made corresponding body movements to describe what being "sexed" meant. When asked where he had been "sexed," the child pointed to his groin area. This information was not offered to prove that sex had actually occurred with the child but rather to show how the expert reached his opinion concerning the child's identifiable stressor.[3]

> This "not-for-truth" exception is a difficult rule to apply in the context of real cases. It has always caused controversy, and presumably will always do so, because it is often arguable whether the declaration is being offered to prove the truth of the content of the declaration or not, and lawyers and judges may quite reasonably reach different conclusions on this question in any given case. . . .
>
> Part of the difficulty in "not-for-truth"

---

[3] In a parallel example, if a doctor diagnoses a patient as suffering from a herniated disc and testifies that the patient described having back pain, this testimony might be offered not for the truth of the matter (i.e., whether back pain actually existed), but rather for the fact that back pain was reported to the doctor and formed the basis of the doctor's diagnosis.

> situations is due to the fact that often such evidence will have a dual nature; the declaration may indeed be relevant on some matter unrelated to the truth of the content of the statement, and yet the content of the statement may go to the issues of the case as well. <u>See, e.g.,</u> <u>Donahue v. Commonwealth</u>, [225 Va. 145, 300 S.E.2d 768 (1983)]. This is perhaps the situation which creates the greatest dilemma for the courts. In that regard, however, it should be remembered that it is a time-honored principle of evidence law that, in general, if evidence is admissible for <u>any</u> purpose, it is admissible.

2 Charles E. Friend, <u>The Law of Evidence in Virginia</u> § 18-3, at 95-96 (4th ed. 1993)(footnote omitted); <u>see</u> <u>Hanson v. Commonwealth</u>, 14 Va. App. 173, 416 S.E.2d 14 (1992).

Even if the child's statement constituted hearsay, it may still have been introduced if it fell within one of the many established hearsay exceptions. <u>See</u> <u>Evans-Smith v. Commonwealth</u>, 5 Va. App. 188, 197, 361 S.E.2d 436, 441 (1987). <u>Cartera</u> provides an exception to the hearsay rule permitting "a physician to testify to a patient's statements concerning his 'past pain, suffering and subjective symptoms' to show 'the basis of the physician's opinion as to the nature of the injuries or illness.'" <u>Cartera</u>, 219 Va. at 518, 248 S.E.2d at 785-86. A physician may also testify as to his or her observations of a patient's physical and emotional conditions and may "state what examinations and tests he performed upon the victims and what medical conclusions he reached as a result."[4] <u>Id.</u> at 519, 248

_____

[4] A physician may also relate statements made by a child patient for the purpose of establishing the child's state of mind. <u>M.E.D. v. J.P.M.</u>, 3 Va. App. 391, 401, 350 S.E.2d 215, 222 (1986).

15

S.E.2d at 786.  A physician may not, however, "recite the details of the offenses and the description of the assailant, as reported to him [or her] by the victim[]."  Id.

In this case, the trial court followed Cartera's guidelines in allowing the psychologist's testimony regarding the child's statement that he had been "sexed."  The child's statement assisted the expert in identifying the stressor underlying the child's mental condition.  The expert did not recite the details of a specifically identified offense nor did he offer any description of the abuser.[5]  The trial court, therefore, did not err in allowing this testimony to be introduced.

V.

SUFFICIENCY OF THE EVIDENCE

Finally, appellant contends that the evidence was not sufficient to prove the charge.  On appeal, the evidence must be viewed in the light most favorable to the Commonwealth and be given all reasonable inferences fairly deducible therefrom.  Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  "The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it."

_____

[5]Contrary to the assertion in Judge Benton's dissent, our analysis would not allow the expert to repeat the disclosure that the child names appellant, nor would it allow the expert to relate detailed circumstances surrounding the abuse.  Details about the abuser or the abuse would have been irrelevant to the expert's opinion regarding the underlying stressor, and may have been more prejudicial than probative.  This is what Cartera precludes.

16

Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988); Code § 8.01-680.

As detailed in Section III, supra, and examined under the familiar standards of appellate review, we hold that the Commonwealth presented sufficient evidence to support appellant's conviction.

Based on the foregoing reasons, we affirm appellant's conviction.

Affirmed.

Moon, C.J., with whom Baker and Annunziata, JJ., join, concurring in part and dissenting in part.

I concur with the majority opinion insofar as it holds that the judgment should be affirmed because any error in the trial court was harmless error. However, I disagree with the majority that the child's statement concerning having been "sexed" was admissible under the guise of allowing the expert to explain the basis of his opinion.

I concur with Judge Benton's dissent's conclusion that the child's statement was inadmissible under Cartera v. Commonwealth, 219 Va. 516, 248 S.E.2d 784 (1978). It is also important to recognize that in criminal trials in Virginia, an expert generally may not base his opinion on inadmissible evidence. See Simpson v. Commonwealth, 227 Va. 557, 566, 318 S.E.2d 386, 391 (1984); cf. Code § 8.01-401.1 (expert opinion in civil cases may be based on inadmissible evidence). While a qualified psychologist may testify as an expert witness in a criminal case and render an opinion based in part on interviews with the subject, see Rollins v. Commonwealth, 207 Va. 575, 580-81, 151 S.E.2d 622, 625-26 (1966), he may not place in the record inadmissible statements made to him during the evaluation process. See Greenfield v. Commonwealth, 214 Va. 710, 714, 204 S.E.2d 414, 418 (1974) (affirming trial court's exclusion of hearsay evidence offered to support a psychiatric opinion).

The majority's decision allows for the admission of evidence not previously permitted in Virginia criminal cases. Because the

18

majority also holds that whether the evidence was admissible or not, the conviction should be affirmed, I would not issue a definitive ruling, but would instead wait until such time as the General Assembly enacts or the Supreme Court adopts a new rule of evidence.[6]

This ruling opens the door for considerable mischief through the manipulation of hired expert witnesses.  It provides an opportunity for parties to get before the jury potentially prejudicial evidence that could not otherwise be admitted.  A criminal defendant, without subjecting himself to cross-examination, could put his version of an incident before the jury under the guise of testimony from his psychiatrist explaining the basis for the psychiatrist's testimony.  The prosecution could use a psychiatrist or psychologist to place statements in the record that would not otherwise be admissible and which could not withstand cross-examination.

---

[6]  The issue raised in this case has been the subject of much study and debate.  The Committee to Draft Rules of Evidence for Virginia on November 10, 1984, approved a draft of proposed Virginia Rule 705, Disclosure of Facts and Data, as follows:

> The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts and data, unless the court directs otherwise. On direct examination, an expert may not testify to facts or data otherwise inadmissible unless the court determines that such facts or data or a summary thereof are necessary for a proper understanding of the basis for the expert's opinion and that such testimony would not unfairly prejudice an opposing party. A cross-examiner may require the expert to disclose the facts or data on which an opinion or inference is based.

19

Even if the child's statement might be admissible under the standards suggested in the proposed rule, see n.1, supra, I do not believe that a proper foundation was laid to admit the statement. The child's statement that he had been "sexed," made during one of more than ten counseling sessions, surely was not essential to diagnosis of an "adjustment disorder." Nor was it necessary for a proper understanding of the basis of the expert's opinion. The majority opinion graphically describes the child's apparent sexual knowledge. The psychologist would likely have made the same diagnosis without the child's statement that he had been "sexed," and he surely could have explained his diagnosis to the jury without recounting this statement.

Accordingly, I concur in the result reached by the majority but dissent insofar as the opinion holds that the child's statement to the psychiatrist was admissible.

Benton, J., dissenting.

I.

I agree with the majority opinion that the trial judge erred in allowing the psychologist to opine that the child had been sexually abused.  See Jenkins v. Commonwealth, 21 Va. App. 222, 463 S.E.2d 330 (1995).  The elements of an offense and the identity of the criminal agent are ultimate facts at issue in a criminal prosecution.  Nicholas v. Commonwealth, 91 Va. 741, 750, 21 S.E. 364, 366 (1895).  In a prosecution for aggravated sexual battery under Code § 18.2-67.3, whether sexual abuse occurred is an element of the offense that the jury must decide based upon the evidence in the record.  The Supreme Court has clearly stated in Cartera v. Commonwealth, 219 Va. 516, 248 S.E.2d 784 (1978), that an expert may not express an opinion as to "'the precise or ultimate fact in issue.'"  Id. at 519, 248 S.E.2d at 786 (quoting Webb v. Commonwealth, 204 Va. 24, 33, 129 S.E.2d 22, 29 (1963)).

I disagree, however, with the majority's holding that the error was harmless.  This Court cannot reasonably conclude upon this record that the error did not affect the jury's verdict.  Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991).  The issue whether Jenkins sexually abused the child was disputed.  Nothing in the record suggests that the jury did not rely upon the testimony of the psychologist in arriving at its verdict.

> Other evidence of a disputed fact standing alone, does not establish that an error is harmless.  . . . [A] harmless error analysis

21

          . . . [is not] simply a sufficiency of the
          evidence analysis.

Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345

(1992).

     This case is not one in which "the other evidence of guilt

was so overwhelming and the error so insignificant by comparison

that the error could not have affected the verdict."  Id. at 457

n.2, 418 S.E.2d at 345 n.2.  Even if "the other evidence amply

supports the jury's verdicts, [evidence is not harmless when] the

disputed testimony may well have affected the jury's decision."

Cartera, 219 Va. at 519, 248 S.E.2d at 786.  Furthermore, the

quality of the inadmissible evidence must be considered.  "When

an opinion is rendered by a witness whom the trial [judge] has

declared to be an expert in his field, such opinion will carry

great weight with the jury and could very well have been the

decisive factor in their minds in determining the [accused's]

guilt."  Callahan v. Commonwealth, 8 Va. App. 135, 140, 379

S.E.2d 476, 479 (1989).  In this case, the psychologist's

testimony, based on ten sessions with the child, that sexual

abuse occurred obviously significantly influenced the jury's

decision.

     Although Jenkins' statement was inculpatory, this Court

cannot say that the jury could not have cast it in a different

light in the absence of the inadmissible evidence.  In his

statement, Jenkins "said that he was sitting in the living room

watching TV, and that [the child] was sitting in his lap, leaning

against his chest, and . . . he put his hand on his penis from over top his clothing and held it there and touched him there for about a minute."  The jury could have found that Jenkins lacked the intent to commit sexual battery.  In addition, if the jury accepted Jenkins' statement that the child sat on his lap on one occasion, the jury could have concluded that the single episode could not conceivably have led to the bizarre conduct exhibited by the child.  Moreover, in considering the mother's testimony, the child's great grandparent's testimony, and Jenkins' admission, the jury certainly could have found that the child's behavior had its genesis prior to and unrelated to the one occasion Jenkins admitted touching the child.

Aside from the expert's opinion, the origin of the child's behavior was not clearly established.  The child's mother described instances beginning in 1992 when the child, who was then two years of age, began to talk about sex and engage in sexually-oriented behavior toward her.  For example, she testified that one evening when she was watching television the child entered her bedroom, removed his clothing, and said he wanted to have sex with her.  On other occasions, he told her "he want[ed] to sex [her] . . . and trie[d] kissing [her] with his mouth open [while] . . . mov[ing] his head around like a french kiss."  She testified that on other occasions he "gyrate[d] his hips and rub[ed] his penis, . . . put [a] pillow on top of him or underneath . . . him saying that he was sexing the pillow, . . .

23

[and] started rubbing his behind on [a retail store] display saying that he was sexing it."

The child's mother testified that prior to the first of those incidents the child took showers with her and that he fondled her breast while she showered with him.  She later stopped taking showers with him when he began talking about sex.  Although the child also showered with the father, no testimony established that the child fondled his father.  The psychologist testified that if he had known that the mother and the father were showering with the child he would have discouraged it.  The psychologist also testified that sexual awareness could result in a child of one to three years of age who took showers with a parent.

The child's great grandmother, who was the child's primary babysitter five days a week for three years, testified that on several occasions she saw the child "run his hand up [his mother's] dress, and [the mother would] just cutely smile and say 'Oh, [child] don't do that.'"  She also testified that she admonished the child's mother to discontinue taking baths with the child and "told her it wasn't right."  The great grandfather also testified that "quite a few times" the child inappropriately put his hands on his mother and in her brassiere to feel her breasts.  He testified that he frequently admonished the child's mother for allowing the child to touch her in that manner.

The evidence, thus, provided a basis from which the jury

24

could have drawn an inference, in the absence of the inadmissible part of the psychologist's testimony, that circumstances other than Jenkins' conduct caused the child's behavior.  Indeed, the evidence suggests that the child may have several stimuli for his behavior.

The evidence proved that the two-year-old child was extensively exposed to cable television and watched movies.  The mother testified that she has television cable service on two of the five televisions in her house.  The great grandmother testified that the child watched television and movies at her house.

In addition to television, the evidence suggests that by age three the child had other exposures that may have influenced his behavior.  The great grandmother testified that she warned the mother about her conduct with the child because the child "knew too much . . . [and] was too bright."  The evidence also suggests that the child was exposed to adult music and "could sing 'Achy Breaky Heart' as good as" any singer.  The evidence also proved that the child had two sixteen-year-old female babysitters who have kept him on weekends and overnight.

The child's conduct, sexual talk, and singing of an adult love ballad are consistent with the daily fare of cable television.  Moreover, unseemly as it may be, many adult males are seen in public with a hand placed on their genital region.  The jury obviously could have found that the child's conduct was

25

the manifestation of various exposures unrelated to Jenkins.

In addition, no evidence proved that the child approached any person other than his mother in a sexually suggestive manner. Indeed, the child never approached the father in that manner and never rubbed his father sexually. The jury might have found it significant that the child only exhibited such conduct toward a female. On this evidence, the origin of the child's behavior was a question for the jury to decide.

I believe that it is evident from the record how important the psychologist's opinion could have been in the jury's decision. Without his inadmissible testimony, the jury might have reached the conclusions that the child's conduct had its origin in exposures to inappropriate but everyday experiences and that Jenkins had no intent to sexually touch the child. The record demonstrates that the erroneous admission of the psychologist's testimony greatly lessened the Commonwealth's burden to prove sexual abuse beyond a reasonable doubt. Thus, I cannot "conclude, without usurping the jury's fact finding function, that, had the error[s] not occurred, the verdict would have been the same." Lavinder, 12 Va. App. at 1005, 407 S.E.2d at 911; see Code § 8.01-678. Because admission of the psychologist's opinion as to the ultimate issue of fact was not harmless error and the trial judge improperly allowed the psychologist to repeat the child's complaint of being "sexed," I would reverse the appellant's conviction and remand for a new

26

trial.

## II.

The psychologist testified that the child "on one occasion, indicated to me that he had been sexed.  That was his word."  I would also hold that the trial judge erred in allowing the psychologist to so testify.  The majority approves of this evidence as either non-hearsay or an exception to the hearsay rule.

In finding the statement an exception to the hearsay rule, the majority reads Cartera too broadly and expands the use of hearsay beyond what the Supreme Court of Virginia ruled in that case.  The Supreme Court "acknowledge[d] the exception to the hearsay rule" that renders admissible statements made to physicians "concerning [a patient's] 'past pain, suffering and subjective symptoms' to show 'the basis of the physician's opinion as to the nature of the injuries or illness.'"  219 Va. at 518, 248 S.E.2d at 786.  See also Mackall v. Commonwealth, 236 Va. 240, 255, 372 S.E.2d 759, 769 (1988), cert. denied, 492 U.S. 925 (1989).  The Supreme Court declined, however, to apply the exception to statements "concerning the circumstances of the offenses and the description of the assailant" made by the rape victims.  Cartera, 219 Va. at 518, 248 S.E.2d at 785.  The Court declined to do so because "[t]his testimony goes beyond a recital of 'past pain, suffering and subjective symptoms.'"  Id. at 518, 248 S.E.2d at 786.

27

The testimony that the trial judge admitted in this case is analogous to the testimony the Supreme Court barred in Cartera. The psychologist's testimony that the child told him he had been "sexed" concerns the circumstances of the particular offense. As in Cartera, the statement was a description of the child's alleged physical encounter and not a description of the child's symptoms. By stating that he was "sexed," the child did not report his pain, suffering or subjective symptoms but rather described the circumstance of events. Cartera does not stand for the proposition that a psychologist may describe the actual physical contact from which the prosecution arises.

Without reference to any Virginia decisions, the majority expands Cartera beyond its bounds by reference to decisions from other states. The Commonwealth concedes that "many of these out-of-state cases are partially based on the adoption by the states of rules equivalent to the Federal Rules of Evidence, § 803(4)." The Supreme Court of Virginia, however, has not adopted the Federal Rules of Evidence as rules of evidence in Virginia. Furthermore, I find no indication in Virginia case law to suggest that the rule announced in Cartera can be supplemented and expanded by reference to the Federal Rules of Evidence or rules of decision from other states based on application of the Federal Rules.

In addition, I do not share the majority's assumption that statements this child made to a psychologist are inherently

28

reliable.  The basis for allowing in evidence statements that a patient makes to a treating physician is the assumption that the patient understands "that the effectiveness of the treatment received will depend upon the accuracy of the information provided to the physician."  John W. Strong, 2 McCormick on Evidence § 277, at 246-47 (4th ed. 1992).  This principle has no application to a child two years of age, who was not competent to testify at trial, talking to a psychologist.  If a child is too young to have the mental capacity to testify at trial, obviously the child cannot understand the importance of truthfully relating matters to a psychologist for purposes of treatment.

Furthermore, Jenkins had no opportunity to challenge directly the child's statements and to demonstrate that the child's use of the term may have arisen from a context that was unrelated to him or that bore no nexus to sexual abuse by any person.  Close scrutiny must be given to a situation, such as here, where because of incompetence, cross-examination of an accuser is non-existent.  I would hold that the psychologist's repeating of the child's statement was hearsay, established an ultimate fact element of the offense, and was clearly prejudicial.

Under the majority's analysis, if the child had named Jenkins during the therapy session, the testimony of the psychologist repeating that disclosure would have been admissible.  Additionally, because the psychologist may have

29

believed that the circumstances surrounding how the abuse occurred might also be important for treatment or forming an expert opinion, the majority's reasoning would allow a psychologist to relate all of those circumstances and where the abuse occurred.  The majority's opinion will allow experts to repeat all the nuances of complaints and establish every element of the offense in detail under the guise that the descriptions of the offense will not be offered for the truth of the matter asserted.  That reasoning directly contradicts <u>Cartera</u>.

For these reasons, I would reverse the conviction and remand for a new trial.