COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Petty and Alston
Argued at Chesapeake, Virginia


GEORGE THOMAS PERRY

                                                    OPINION BY
v.       Record No. 1282-10-1         JUDGE ROSSIE D. ALSTON, JR.
                                                    AUGUST 9, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jerrauld C. Jones, Judge

J. Barry McCracken, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Alice T. Armstrong, Assistant Attorney General II (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Following a jury trial, George Thomas Perry (appellant) was convicted of two counts of

attempted robbery and two counts of the use of a firearm in the commission of an attempted

robbery.  On appeal, appellant raises the following assignments of error:  (1) the trial court erred in

allowing a witness to testify regarding a victim's out-of-court statements under the excited utterance

exception to the hearsay rule; (2) the trial court erred in allowing a witness to testify regarding a

victim's out-of-court statements, on the grounds that this ruling violated appellant's Sixth

Amendment right to confront his accuser; and (3) the trial court erred in denying appellant's motion

for a mistrial, on the grounds that a juror fell asleep during the cross-examination of one of the

victims.  Upon review of the record, we find no error and affirm the convictions.

I.  BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting <u>Martin v. Commonwealth</u>, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

On September 1, 2009, sixteen-year-old Quamon Wilson (Wilson) was "hanging out" with his cousin, Courtney Murray (Murray),[1] at Bowling Park Elementary School. The cousins had been sitting on the swings and talking for about an hour when Wilson noticed appellant, who was also sixteen years old at the time, an individual known as "Quan," and a boy that Wilson did not know standing together on the playground. Appellant approached Wilson and Murray and asked them where they were from. Appellant then told the cousins that Quan wanted to fight Wilson. To that end, appellant claimed Quan had called Wilson a "bitch." Wilson responded that he did not want to fight and that "there was no reason to fight him." Thereafter, Quan approached appellant, Wilson, and Murray. Wilson, who knew Quan from having previously lived in the same neighborhood as him, asked Quan why he had called him a "bitch." Quan denied calling Wilson any name.

Appellant then backed away, pulled a "9 millimeter" black, automatic handgun from his waistband, pointed it at Wilson and Murray, and asked Wilson and Murray, "What you got?" When Wilson and Murray stated that they did not have anything, appellant told Wilson "to stop playing or he [was] going to hit [Wilson] in the head." Making good on the threat, appellant walked behind Wilson and hit him on the left side of his head with the gun. The impact left a "knot that was swollen" on Wilson's head.

Appellant backed away from Wilson and Murray, still pointing the gun at them. Fearful that appellant was planning on shooting him, Wilson attempted to hide behind the playground

---

[1] There is no specific testimony in the record regarding Murray's age, but we infer from the record that he was also a minor.

equipment. Appellant, still pointing the gun at the cousins and accompanied by Quan and the unidentified boy, then ran away from Wilson and Murray.

Scared, Wilson and Murray left the playground and ran to Wilson's house. At trial, Wilson estimated that it took "five, almost ten minutes" for the cousins to reach Wilson's home. When the cousins arrived, they "rushed in" and told Wilson's father, John Adams (Adams), what had occurred. After listening to the boys, Adams decided that he wanted to talk to appellant and the other boys involved in the incident. He, Wilson, and Murray drove in Adams' truck "around the community" until Murray spotted appellant and the other boys standing on the porch of a house on East Virginia Beach Boulevard. Adams pulled into a driveway adjacent to the house, opened his car door, and yelled to appellant, asking appellant to speak with him. Rather than replying, appellant and his companions ran away. Adams then called 911.

Norfolk Police Officer J. Williams was dispatched in response to Adams' call. Upon arrival, he spoke with Wilson, who reported what had occurred at the playground. Officer Williams could clearly see a "swollen lump" on Wilson's head, which appeared to be the result of a recent injury. After Wilson identified appellant as his attacker, Officer Williams detained appellant. Officer Williams did not recover a gun.

Appellant was charged with and eventually indicted on two counts of attempted robbery and two counts of use of a firearm in the commission of an attempted robbery.

Appellant's two-day jury trial began on January 28, 2010. On behalf of the Commonwealth, Wilson testified regarding the events at the playground and his family's subsequent successful efforts to locate appellant. At the conclusion of appellant's cross-examination of Wilson, the Commonwealth stated that it wished to conduct a redirect examination, but that it would like to bring a matter to the trial court's attention outside the

presence of the jury. Once the trial court excused the jury from the courtroom, the following

dialogue occurred:

> [COMMONWEALTH]: . . . I would ask the Court to admonish
> the jury to let us know if they need a break. The juror sitting on
> the very end here appears to be nodding off and [the
> Commonwealth's co-counsel] believes that she heard him snoring,
> which would create an issue since we don't have an alternate.
>
>     \*    \*    \*    \*    \*    \*    \*
>
> THE COURT: All right. Well, with respect to the attentiveness of
> jurors, it's always an issue. We will certainly remind them, not
> with any specific direction to any particular juror, but we'll remind
> all jurors of what their oath is and that they are obligated to pay
> attention. If it continues to be an issue, we may have to deal with
> it specifically, but for right now, I'm satisfied it's going to be dealt
> with as just a generalized admonition.

Appellant raised no objection to the trial court's resolution of the circumstances and requested no

other instruction or relief. When the jury returned, the trial court admonished the jury:

> [L]adies and gentlemen of the jury, it's very important that we all
> pay very careful attention to everything that's being said. I know
> that you've had a long day already, but I do need to remind you to
> pay very close attention. Sometimes our attention can wane or be
> distracted and we can be preoccupied, but the trial is very
> important to those parties involved in it. And so, we need to make
> sure that everybody is paying very close attention.

Once again, appellant neither raised an objection nor requested another instruction or alternative

relief.

The Commonwealth subsequently called Adams to testify. In response to the

Commonwealth's question regarding the date of the offense, September 1, 2009, Adams

testified:

> September 1st, I had came [sic] home from work and I wasn't in
> the house but a couple minutes. So, I try to wind down, put my
> keys, and cell phone down, and everything. My nephew was
> visiting. At that point he had come in and my son was with him.
> They rushed in the house and told me –

- 4 -

At this time, appellant's trial counsel interposed a hearsay objection. The following exchange

occurred:

> [DEFENSE COUNSEL]: Your Honor, I would object on the grounds of hearsay –
>
> [COMMONWEALTH]: Your Honor, at this point it's not being offered for the truth of the matter, and I think possibly it can be established as an excited utterance as exception to hearsay.
>
> [DEFENSE COUNSEL]: Your Honor, with regard to excited utterance, this is happening, at minimum, ten minutes and at least one mile away from something else. I don't know why the individuals would remain so excited that the statement isn't responsive to something they are seeing immediately.
>
> THE COURT: Having heard the testimony of the previous witness, I'm going to overrule your objection. You may answer the question, sir.
>
> [COMMONWEALTH]: You were telling us what happened when your son and nephew came into the house.
>
> [ADAMS]: As I was mentioning, my son and my nephew had come in the house and they had mentioned that they had been at Bowling Park and they had some altercation with some young guys.
>
> [COMMONWEALTH]: Now, when you say "altercation," what did they tell you happened?
>
> [ADAMS]: Specifically, he said that one of the guys had a pistol, and he had been hit upside the head, and they had been robbed, and this type of nature.
>
> [COMMONWEALTH]: Who had been hit by the gun?
>
> [ADAMS]: My son Quamon Wilson.
>
> [COMMONWEALTH]: Did you have a chance to look at your son when he came in the house?
>
> [ADAMS]: I didn't examine him as far as looking at his head for any injuries or anything because at that point I didn't notice any type of blood or anything. If he had any kind of injuries, they were, I guess internal.

[COMMONWEALTH]:  After they told you about that, what did you do?

[ADAMS]:  Well, just being a parent, my instinct was to go and look for these guys, because they said they were in this location. And so we all got in my truck, my Jeep, and we rode around to the site, the playground where they were at, all this time, apparently, where this happened and we went around, just drove around the community there until, you know, we ran -- I drove upon these young guys about a quarter -- a couple blocks away from the playground where this all started at.

[COMMONWEALTH]:  So, who is in the car with you?

[ADAMS]:  At this point, myself, my son, and my nephew Courtney.

[COMMONWEALTH]:  When you got to the house, what did you do?

[ADAMS]:  We arrived to [sic] the house.  At that point, I had asked my son, I said, "These guys on this porch look familiar to you?"  And they was pointing and said, "Yes, Daddy["] -- My son said, "Yes, Daddy, that is the guy there."  And then pointed out the two or three guys that were sitting right there at this house on the porch.

Appellant's counsel offered no further objections or discussion of the context of Adams' testimony.  During cross-examination of Adams, appellant's trial counsel elicited from Adams that both Wilson and Murray identified appellant as the individual who had attempted to rob them.

At the conclusion of the first day of the two-day trial, the trial court expressly asked the parties, "Anything else to be said or done today?," to which appellant's trial counsel responded, "No, Your Honor."  Furthermore, the record does not reflect that either party raised any additional concerns regarding the jury during the remainder of the trial.

At the close of the Commonwealth's case and again at the conclusion of all the evidence, appellant moved to "strike the indictments" on the ground that appellant had not had the

opportunity to confront his accuser, Murray,[2] as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 8 of the Constitution of Virginia.  The trial court denied both of appellant's motions.

On the second day of the trial, January 29, 2010, the jury convicted appellant of all four of the charged offenses.

On March 10, 2010, appellant filed a motion requesting the trial court set aside the jury's verdict, or in the alternative, declare a mistrial.  Appellant asserted that the evidence was insufficient to convict appellant and that juror misconduct entitled him to a mistrial.  The trial court held a hearing on appellant's motion to set aside the verdict on May 4, 2010.  At the hearing, appellant's trial counsel stated that she also wished to challenge Adams' testimony under the Sixth Amendment and pursuant to Crawford v. Washington, 541 U.S. 36 (2004).  The trial court took appellant's challenges to Adams' testimony under advisement.  It did not specifically rule on appellant's challenges to the sufficiency of the evidence and juror misconduct.

On June 4, 2010, prior to the sentencing hearing, the trial court denied appellant's motion to set aside the verdict.  In doing so, the trial court specifically held that appellant's Confrontation Clause-based challenge to Adams' testimony was not timely made; however, the trial court specifically found that even if the objection was timely made, appellant's argument was without merit because Adams' testimony was not testimonial.  Finally, according to the trial court, assuming it was error to admit Adams' testimony, such error was harmless because Adams' testimony was cumulative.

The trial court subsequently sentenced appellant to a total of eighteen years imprisonment with ten years suspended.  This appeal followed.

---

[2] Neither the Commonwealth nor appellant called Murray as a witness.

## II. ANALYSIS

One of the tenets of Virginia's jurisprudence is that trial counsel must timely object with sufficient specificity to an alleged error at trial to preserve that error for appellate review. See Rule 5A:18; Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997); Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989). This requirement is codified in Rule 5A:18, which, at the time of appellant's trial, stated:

> No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal.[3]

"The laudatory purpose behind Rule 5A:18 . . . , frequently referred to as the contemporaneous objection rule[ ], is to require that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary." Brown, 8 Va. App. at 131, 380 S.E.2d at 10. "'A specific, contemporaneous objection also provides the opposing party an opportunity to address an issue at a time when the course of the proceedings may be altered in response to the problem presented.'" Murillo-Rodriguez v. Commonwealth, 279 Va. 64, 79, 688 S.E.2d 199, 207 (2010) (quoting Shelton v. Commonwealth, 274 Va. 121, 126, 645 S.E.2d 914, 916 (2007)); accord West v. Commonwealth, 43 Va. App. 327, 337, 597 S.E.2d 274, 278 (2004) ("[A] specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that

---

[3] Effective July 1, 2010, Rule 5A:18 was revised to state that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." Because the proceedings below were completed prior to this revision taking effect, we will rely on the language of Rule 5A:18 that was then in effect. See Fails v. Va. State Bar, 265 Va. 3, 5 n.1, 574 S.E.2d 530, 531 n.1 (2003) (applying the Rule of Court in effect at the time of the proceedings below).

stage of the proceeding." (citing Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991))). When objections are timely raised, "orderly and efficient justice" may be accomplished, for "[e]rrors usually can be corrected in the trial court . . . without the necessity of appeal." Brown, 8 Va. App. at 131, 380 S.E.2d at 10. Furthermore, when corrective action is timely made by the trial court, mistrials may also be avoided. Neal v. Commonwealth, 15 Va. App. 416, 422, 425 S.E.2d 521, 525 (1992) (citing Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992)).

Rule 5A:18 is not an altogether static rule in that it does provide two exceptions to the contemporaneous objection rule. This Court may invoke the "good cause" or "ends of justice" exceptions "where error has resulted in manifest injustice." Brown, 8 Va. App. at 131, 380 S.E.2d at 10. The Court may only invoke the "good cause" exception where an appellant did not have the opportunity to object to a ruling in the trial court; however, when an appellant "had the opportunity to object but elected not to do so," the exception does not apply. Luck v. Commonwealth, 32 Va. App. 827, 834, 531 S.E.2d 41, 44 (2000) (citing Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998)). "'The ends of justice exception is narrow and is to be used sparingly.'" Bazemore v. Commonwealth, 42 Va. App. 203, 219, 590 S.E.2d 602, 609 (2004) (*en banc*) (quoting Redman, 25 Va. App. at 220, 487 S.E.2d at 272). To invoke the "ends of justice" exception, an appellant "must 'affirmatively show[] that a miscarriage of justice has occurred not . . . that a miscarriage *might* have occurred.'" Id. at 219, 590 S.E.2d at 610 (alterations in original) (quoting Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)). To meet this burden, an appellant must "'affirmatively show [that] . . . the error [was] clear, substantial and material.'" Id. (alterations in original) (quoting Brown, 8 Va. App. at 132, 380 S.E.2d at 11).

In the instant case, appellant properly preserved the first assignment of error challenging the admissibility of a witness' testimony regarding the victim's out-of-court statements under the excited utterance exception to the hearsay rule, but neglected under any objective review of the record to make timely objections to preserve his second and third assignments of error. For the following reasons, we affirm appellant's convictions.

### A. The admission of Courtney Murray's out-of-court statements under the excited utterance exception to the hearsay rule

Appellant argues in his first assignment of error on appeal that it was error for the trial court to allow Adams to testify regarding statements attributed to Murray. Appellant argues that Murray's statements were not admissible under the excited utterance exception to the rule against hearsay, because five to ten minutes had elapsed since Murray had experienced a startling event. Additionally, appellant argues that the Commonwealth did not "proffer any non-hearsay purpose for which the statement was otherwise being proffered into evidence."

During the trial appellant timely objected to Adams' testimony on hearsay grounds, specifically arguing in response to the Commonwealth's rejoinder that the statements were not excited utterances. Thus, this assignment of error is preserved for appellate review.

"There is no fixed rule by which the question whether the statement is admissible as an excited utterance can be decided. Resolution of the issue depends upon the circumstances of each case and 'rests within the sound judicial discretion and judgment of the trial court.'" Clark v. Commonwealth, 235 Va. 287, 292, 367 S.E.2d 483, 486 (1988) (quoting Huffman v. Commonwealth, 168 Va. 668, 681, 190 S.E. 265, 271 (1937)). "'A statement comes within the excited utterance exception to the hearsay rule and is admissible to prove the truth of the matter stated, when the statement is spontaneous and impulsive, thus guaranteeing its reliability.'" Esser v. Commonwealth, 38 Va. App. 520, 525, 566 S.E.2d 876, 879 (2002) (quoting Braxton v. Commonwealth, 26 Va. App. 176, 184, 493 S.E.2d 688, 691 (1997)). "The statement must be

prompted by a startling event and be made at such time and under such circumstances as to preclude the presumption that it was made as the result of deliberation." Goins v. Commonwealth, 251 Va. 442, 460, 470 S.E.2d 114, 126 (1996) (citing Goins v. Commonwealth, 218 Va. 285, 287, 237 S.E.2d 136, 138 (1977)). Finally, "the declarant must have firsthand knowledge of the startling event." Id. (citing John W. Strong, McCormick on Evidence § 272 (4th ed. 1992)).

> Whether a hearsay statement is an excited utterance is not determined solely by the lapse of time between the startling event and the declaration. Instead, the lapse of time is but one circumstance to consider when determining whether the declarant's statement was prompted by a startling event, and not the product of premeditation, reflection, or design.

Braxton, 26 Va. App. at 184, 493 S.E.2d at 691 (citations omitted) (internal quotation marks omitted) (holding a child-witness' hearsay statement was admissible under the excited utterance exception when there had been an undetermined period of time of up to twelve hours between the startling event and the child-witness' statement). The distance the declarant travels between the location of the startling event and where he actually speaks is also not conclusive. Clark, 235 Va. at 292, 367 S.E.2d at 486 (citing Upton v. Commonwealth, 172 Va. 654, 657, 2 S.E.2d 337, 339 (1939) (holding a victim's hearsay statement, which he made after walking 492 feet away from the location where he received a mortal wound, was admissible). Additionally, the "physical condition and emotional stability" of the declarant are factors that "must be considered." Id. at 293, 367 S.E.2d at 486. In summary, "[t]he test is whether the statement is the transaction speaking through the declarant or the declarant speaking about the transaction." Id. at 292, 367 S.E.2d at 486 (citing Upton, 172 Va. at 657-58, 2 S.E.2d at 339).

Preliminarily, we must note that in the context of this issue on appeal, appellant challenges the admission of only Murray's out-of-court statements. Accordingly, we need examine only those statements that were attributed to Murray during Adams' testimony.

Rule 5A:12(c)(1)(i) ("Only assignments of error assigned in the petition for appeal will be noticed by this Court."). In this regard, Adams testified that Murray and his son entered Adams' home, and "*they* had mentioned that they had been at Bowling Park and they had some altercation with some young guys." (Emphasis added). Thereafter, Adams testified, "Specifically, he said that one of the guys had a pistol, and he had been hit upside the head, and they had been robbed, and this type of nature." Because Adams did not refer to the speaker by name, it is not clear to whom Adams was referring when he used the pronoun "he" to identify the speaker.[4] Subsequently, Adams discussed how he, Wilson, and Murray attempted to find appellant. During direct examination, Adams testified that Wilson identified appellant as the individual who struck him, and during appellant's cross-examination, he stated that both boys identified appellant as the perpetrator.

There are no out-of-court statements in the record that can be specifically attributed to Murray alone. Adams testified that both Wilson and Murray informed him of the "altercation" and that both boys identified appellant as the perpetrator. While it is not clear from Adams' testimony who told him the specific details of the attempted robbery and subsequent assault, Wilson testified to substantially the same facts during his direct examination.

In any event, the totality of the circumstances surrounding the statements (notwithstanding who may have actually made the statements) satisfies the requirements of the excited utterance exception. The record contains sufficient evidence to establish that Wilson and Murray were still acting under the agitation of the startling event, which had occurred minutes prior to their arrival at Adams' home. The boys had run directly to Adams' home after appellant assaulted Wilson and pointed his gun at both of the teenage boys. After "rush[ing] in" to

---

[4] We recognize it is possible that Adams intended to state that Murray informed him that Wilson had been "hit upside the head."

Adams' home, they immediately told Adams what had transpired. The statements were not "the product of premeditation, reflection, or design." Based on these circumstances, we conclude that the trial court did not abuse its discretion in admitting the statement.

Moreover, assuming it was error to admit the challenged testimony, this error constituted nonconstitutional harmless error, for

> "[i]f, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand."

Adams v. Commonwealth, 275 Va. 260, 277-78, 657 S.E.2d 87, 97 (2008) (omissions in original) (quoting Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001)) (citing Billips v. Commonwealth, 274 Va. 805, 810, 652 S.E.2d 99, 102 (2007)). "The effect of an error on a verdict varies widely 'depending upon the circumstances of the case.' Each case must, therefore, be analyzed individually to determine if an error has affected the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1009, 407 S.E.2d 910, 913 (1991) (*en banc*) (quoting Commonwealth v. Story, 383 A.2d 155, 164 (Pa. 1978)).

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). Additionally, in situations where "the evidence of the defendant's guilt is not overwhelming, if the evidence admitted in error was merely cumulative of other, undisputed evidence, we may still conclude that the error did not

- 13 -

affect the verdict." Ferguson v. Commonwealth, 16 Va. App. 9, 12, 427 S.E.2d 442, 445 (1993) (citing Hooker v. Commonwealth, 14 Va. App. 454, 457-58, 418 S.E.2d 343, 345 (1992); Phoung v. Commonwealth, 15 Va. App. 457, 465-66, 424 S.E.2d 712, 717 (1992)).

Considering these standards, we look to the evidence to see if the allegedly improperly admitted statements by Murray reasonably had any effect upon the verdict of the jury.

Upon review of the record in this matter, we hold that the judgment was not substantially swayed by any theoretical error. We find that even if the statements are properly attributed to Murray, the evidence of Murray's statements was cumulative because Wilson testified to substantially the same facts *and* the statements that Adams may have attributed to Murray were the same as those that he attributed to Wilson, which appellant did not challenge on appeal. Therefore, we can say with fair assurance that appellant had a fair trial and the verdict and the judgment were not substantially affected by the admission of Murray's out-of-court statements. See Adams v. Commonwealth, 48 Va. App. 737, 754, 635 S.E.2d 20, 28 (2006) (citing Clay, 262 Va. at 259-60, 546 S.E.2d at 731; Code § 8.01-678), aff'd, 275 Va. 260, 657 S.E.2d 87 (2008).

### B. The admission of Courtney Murray's out-of-court statements pursuant to the Sixth Amendment of the United States Constitution

Appellant next argues on appeal that the trial court erred in allowing Adams to testify regarding Murray's out-of-court statements because they violated appellant's Sixth Amendment right to confront his accusers. At trial, appellant failed to raise any sort of constitutional argument or Sixth Amendment challenge to Adams' testimony regarding Murray's out-of-court statements during Adams' testimony. Instead, appellant argued during both the close of the Commonwealth's evidence and the conclusion of all the evidence that the trial court should "strike the charges" against appellant because appellant had not been afforded the right to confront Murray pursuant to the Sixth Amendment of the United States Constitution and Article I, Section 8 of the Constitution of Virginia.

- 14 -

"'Rule 5A:18 applies to bar even constitutional claims.'" Farnsworth v. Commonwealth, 43 Va. App. 490, 500, 599 S.E.2d 482, 487 (2004) (quoting Ohree, 26 Va. App. at 308, 494 S.E.2d at 488), aff'd, 270 Va. 1, 613 S.E.2d 459 (2005). The Commonwealth argues that appellant waived appellate review of this assignment of error under Rule 5A:18 because appellant failed to make a specific and timely objection during Adams' testimony. We agree and hold that appellant's failure to object during Adams' testimony constituted a waiver. While appellant timely objected to Murray's out-of-court statements on hearsay grounds, that objection did not preserve for appellate consideration the question of whether appellant's right to confront his accuser was violated. See W. Alexandria Prop., Inc. v. First Va. Mortg. and Real Estate Inv. Trust, 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980) ("On appeal, though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court."); Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc) ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review."). Rule 5A:18 requires objections "be both *specific* and *timely*." Thomas v. Commonwealth, 44 Va. App. 741, 750, 607 S.E.2d 738, 742, adopted upon reh'g *en banc*, 45 Va. App. 811, 613 S.E.2d 870 (2005). Had appellant timely objected, the trial court would have had the opportunity "to intelligently consider [the] issue and, if necessary, to take corrective action." Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (en banc) (citing Head v. Commonwealth, 3 Va. App. 163, 167, 348 S.E.2d 423, 426 (1986)).

Appellant argues that he properly preserved the assignment of error through his motions to strike. We disagree. The Rules of the Supreme Court of Virginia and Virginia's jurisprudence reinforce the maxim that *motions to strike the evidence are not the proper vehicles for raising constitutional challenges to the admissibility of hearsay evidence*. Motions to strike

the evidence challenge "the evidence . . . as a matter of law to sustain a conviction." Rule 3A:15(a). "The office of a motion to strike the evidence . . . is to challenge the sufficiency, not the admissibility, of the evidence." Poole v. Commonwealth, 211 Va. 258, 260, 176 S.E.2d 821, 823 (1970). Therefore, "[a] litigant may not, in a motion to strike, raise for the first time a question of admissibility of evidence." Woodson v. Commonwealth, 211 Va. 285, 288, 176 S.E.2d 818, 821 (1970). Thus, appellant's motions to strike failed to preserve the issue for appellate review pursuant to Rule 5A:18.

Appellant asks that if this Court finds he did not timely note his objection, that this Court consider his assignment of error under the "ends of justice" exception to Rule 5A:18. As noted previously, to invoke the "ends of justice" exception, an appellant "must 'affirmatively show[] that a miscarriage of justice has occurred not . . . that a miscarriage *might* have occurred.'" Bazemore, 42 Va. App. at 219, 590 S.E.2d at 610 (alterations in original) (quoting Mounce, 4 Va. App. at 436, 357 S.E.2d at 744). "In examining a case for miscarriage of justice, we . . . determine whether the record contains affirmative evidence of innocence or lack of criminal offense.'" Tooke v. Commonwealth, 47 Va. App. 759, 765, 627 S.E.2d 533, 536 (2006) (quoting Lewis v. Commonwealth, 43 Va. App. 126, 134, 596 S.E.2d 542, 546 (2004), rev'd on other grounds, 269 Va. 209, 608 S.E.2d 907 (2005)).

Here, the record neither contains affirmative evidence of appellant's innocence, see, e.g., Ali v. Commonwealth, 280 Va. 665, 671, 701 S.E.2d 64, 68 (2010) (excusing default where the "evidence clearly and affirmatively shows that an element of one of the crimes of which Ali was convicted did not occur"), nor does the record establish that appellant "was convicted of a non-offense," Jimenez v. Commonwealth, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991) (reversing Jimenez's conviction and finding Jimenez was convicted of a non-offense when the

granted jury instruction omitted some essential elements of the offense and no evidence was produced relating to those elements).

Because appellant failed to show that a miscarriage of justice occurred, we decline to apply the "ends of justice" exception to Rule 5A:18. Bazemore, 42 Va. App. at 224, 590 S.E.2d at 612.

### C. The trial court's denial of appellant's motion for a mistrial based on a juror's alleged misconduct

Finally, appellant argues that the trial court erred in denying appellant's motion for a mistrial on the grounds that a juror allegedly fell asleep during the testimony of Wilson, the Commonwealth's first witness. Appellant argues that juror inattentiveness is a form of juror misconduct and the trial court's failure to determine whether the juror's misconduct prejudiced appellant's case was an abuse of discretion. Again, we hold that appellant failed to properly preserve this assignment of error pursuant to Rule 5A:18.[5]

At the close of appellant's cross-examination of Wilson, *the Commonwealth* alerted the trial court to the possibility that one of the jurors had fallen asleep. In response, the trial court admonished the entire jury that it needed to "pay very careful attention to everything that's being said." Not once did appellant raise any objection or request any other instruction or relief from the trial court despite at least two separate invitations from the trial court to do so. The record does not reflect that either appellant or the Commonwealth raised any additional concerns regarding any juror during the remainder of the trial. It was not until appellant had been

---

[5] Although other jurisdictions have concluded that juror inattentiveness is a form of juror misconduct, see, e.g., United States v. Sherrill, 388 F.3d 535, 537-38 (6th Cir. 2004); United States v. Newman, 982 F.2d 665, 669-71 (1st Cir. 1992); United States v. Warner, 690 F.2d 545, 555 (6th Cir. 1982), Virginia's appellate courts have not yet been asked to make this determination. As appellant failed to preserve this question for appellate review, we refrain from addressing this question in the instant case.

convicted of all four charged offenses that appellant moved for a mistrial based on the juror's alleged misconduct.

The Supreme Court of Virginia has "repeatedly held that if a defendant wishes to take advantage on appeal of some incident he regards as objectionable enough to warrant a mistrial, he must make his motion timely or else be deemed to have waived his objection." Yeatts v. Commonwealth, 242 Va. 121, 137, 410 S.E.2d 254, 264 (1991) (citing Cheng v. Commonwealth, 240 Va. 26, 38-39, 393 S.E.2d 599, 605-06 (1990); Price v. Commonwealth, 213 Va. 113, 121, 189 S.E.2d 324, 330 (1972); Brown v. Commonwealth, 208 Va. 512, 518-19, 158 S.E.2d 663, 668-69 (1968); Russo v. Commonwealth, 207 Va. 251, 257, 148 S.E.2d 820, 825 (1966)). More particularly, when a defendant learns of alleged juror misconduct during the trial, but fails to move for a mistrial at the time the misconduct is discovered, the defendant waives appellate review of the juror's misconduct. Riner v. Commonwealth, 268 Va. 296, 318, 601 S.E.2d 555, 567 (2004) (citing Rule 5:25, the Rule of the Virginia Supreme Court that articulates the contemporaneous objection rule); see also Yeatts, 242 Va. at 137, 410 S.E.2d at 264 (holding a motion for mistrial was untimely when it was made the day after the alleged objectionable incident occurred).

Appellant argues that pursuant to Mayo v. Commonwealth, 10 Va. App. 335, 391 S.E.2d 888 (1990), this Court should disregard his failure to timely object to the trial court's handling of the allegedly sleeping juror and consider whether it was error for the trial court to deny his motion for mistrial. In Mayo, the defendant asserted that the trial court erred by failing to remove a juror who was allegedly sleeping, because the sleeping juror denied the defendant his right to a fair and competent jury. 10 Va. App. at 337, 391 S.E.2d at 890. During the presentation of the Commonwealth's evidence, the trial court *sua sponte* instructed the jury members to keep their eyes open. Id. The record did not reflect that the defendant ever

- 18 -

requested the juror's removal, and the trial court held that because the defendant failed to "request that the juror be removed at the time when he was allegedly sleeping[,] . . . his objection was not timely." Id.

The precise holding in Mayo reiterates Virginia's long-standing rule requiring a contemporaneous objection when a defendant demands a mistrial. See, e.g., Yeatts, 242 Va. at 137, 410 S.E.2d at 264; Cheng, 240 Va. at 38-39, 393 S.E.2d at 605-06; Price, 213 Va. at 121, 189 S.E.2d at 330; Brown, 208 Va. at 518-19, 158 S.E.2d at 668-69; Russo, 207 Va. at 257, 148 S.E.2d at 825. However, appellant argues that the Mayo Court's decision to comment on whether the juror was actually asleep during the trial required the trial court to investigate the alleged juror misconduct in the instant case. To the contrary, the Mayo Court stated:

> Furthermore, we cannot conclude from the record that the juror was, in fact, asleep or that the court abused its discretion in failing to remove him. The record reflects that the court did not agree with defense counsel's observations that the juror appeared to be asleep during most of the trial. Defense counsel conceded at oral argument that just because a juror's eyes were closed did not mean that the juror was inattentive.

10 Va. App. at 337, 391 S.E.2d at 890. From this reference appellant contends that this Court in Mayo based its decision to affirm the defendant's conviction not only on the defendant's failure to comply with the contemporaneous objection rule, but also on the trial court's finding that the juror in Mayo was not actually asleep.

We disagree. While the Mayo Court suggested a supplementary rationale as to why the trial court's decision to deny the defendant's request for mistrial was not error, the defendant's failure to timely object standing alone was deemed sufficient to deny the defendant's request for a mistrial.

Id. Specifically, the Mayo Court found, "Mayo did not request that the juror be removed at the time when he allegedly was sleeping. Thus, his objection was not timely." Id.[6]

Also instructive is this Court's holding in Green v. Commonwealth, 26 Va. App. 394, 402-03, 494 S.E.2d 888, 891 (1998), a case involving a post-trial challenge to a juror's alleged impartiality, which was brought to counsel's attention during the *voir dire* portion of the trial. Recognizing trial tactics associated with the presentation of any trial, this Court noted that the record in Green disclosed that the defendant therein made no effort to pursue relief when the issue first arose during trial. This Court held:

> "To permit prisoners to avail themselves, after verdict, of
> pre-existing objections to the competency of jurors, as a matter of
> right, would not only be unreasonable, but most mischievous in its
> consequences . . . . A prisoner knowing, or *willfully remaining
> ignorant* of the incompetency of a juror, would take the chances of
> a favorable verdict . . . ; and if the verdict should be adverse, would
> . . . [seek to] avoid its effect."

---

[6] We note that the instant case and Mayo are distinguishable from those cases where defendants timely object at trial to alleged juror misconduct that is discovered during the trial. In those circumstances, the trial court must conduct an investigation to "determine whether such misconduct probably resulted in prejudice. And the burden of establishing that probability is upon the party moving for a mistrial." Robertson v. Metro. Wash. Airport Auth., 249 Va. 72, 76, 452 S.E.2d 845, 847 (1995) (citing Haddad v. Commonwealth, 229 Va. 325, 330, 329 S.E.2d 17, 20 (1985)). The instant case and Mayo are also different from those situations where the alleged misconduct is discovered after the jury is discharged. Under those circumstances, if "the allegations are sufficient to require investigation, a trial court abuses its discretion in ruling upon a motion for a mistrial without investigating the alleged misconduct to ascertain whether it prejudiced the case." Id. (citing Commercial Union Ins. Co. v. Moorefield, 231 Va. 260, 266-67, 343 S.E.2d 329, 333-34 (1986); Kearns v. Hall, 197 Va. 736, 743, 91 S.E.2d 648, 653 (1956)). When an investigation is conducted by the trial court, if the defendant's rights are prejudiced, the trial court abuses its discretion by failing to grant the defendant's motion for a mistrial. Haddad, 229 Va. at 330, 329 S.E.2d at 20 (citing Hood v. Kelly, 231 So. 2d 901, 903 (Ala. 1970); State v. Allen, 609 P.2d 219, 223 (Kan. App. 2d 1980); State v. Day, 414 So. 2d 349, 350 (La. 1982); State v. Mimmovich, 284 A.2d 282, 287 (Me. 1971); People v. Provost, 259 N.W.2d 183, 185-86 (Mich. App. 1977), rev'd on other grounds, 271 N.W.2d 777 (Mich. 1978); Russell v. Pere Marquette Ry. Co., 223 N.W. 230, 232 (Mich. 1929); McGuire v. Amyx, 297 S.W. 968, 975 (Mo. 1927); Tate v. Rommel, 478 P.2d 242, 245 (Wash. App. 1970)).

Id. at 402, 494 S.E.2d at 892 (quoting Allen v. Commonwealth, 122 Va. 834, 845-46, 94 S.E. 783, 787 (1918)). The Green Court concluded that the "defendant's 'conscious decision to find out what the jury was going to do . . . in hopes that [it] might acquit' constituted a waiver of his right to further inquiry." Id. at 403, 494 S.E.2d at 892 (quoting Gray v. Hutto, 648 F.2d 210, 211 (4th Cir. 1981)) (citing United States v. Breit, 712 F.2d 81, 82 (4th Cir. 1983); Robertson v. Metro. Wash. Airport Auth., 249 Va. 72, 76-77, 452 S.E.2d 845, 847 (1995); Royal v. Commonwealth, 2 Va. App. 59, 69-70, 341 S.E.2d 660, 666 (1986), rev'd on other grounds, 234 Va. 403, 362 S.E.2d 323 (1987)).

Similarly, in the instant case, appellant was on notice of potential juror inattentiveness or misconduct, yet he did not object nor did he request an investigation into the juror's ability to consider the case. Instead, he chose to wait until the jury had delivered its verdict of guilty and the trial court had discharged the jury to raise his objection to the juror's conduct. We choose not to speculate as to the reasons for appellant's forbearance in objecting to the juror's alleged inattentiveness; but we hold that appellant's failure to object or request relief when the juror's alleged inattention was brought to his attention at trial constituted both a failure to timely demand a mistrial, see Yeatts, 242 Va. at 137, 410 S.E.2d at 264; Cheng, 240 Va. at 38-39, 393 S.E.2d at 605-06; Price, 213 Va. at 121, 189 S.E.2d at 330; Brown, 208 Va. at 518-19, 158 S.E.2d at 668-69; Russo, 207 Va. at 257, 148 S.E.2d at 825, and a failure to preserve the assignment error for appellate review pursuant to Rule 5A:18.

Additionally, for the reasons stated in Section II(B), we find no reason to apply the "ends of justice" exception to Rule 5A:18 as requested by appellant.

### III. CONCLUSION

For the foregoing reasons, we affirm the ruling of the trial court.

Affirmed.