COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Athey and Senior Judge Petty
Argued by videoconference


DANIEL LEE BOWMAN

MEMORANDUM OPINION* BY
v.        Record No. 2185-23-3             JUDGE CLIFFORD L. ATHEY, JR.
                                           JUNE 3, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CARROLL COUNTY
Brett L. Geisler, Judge

William B. Vaughan for appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court of Carroll County ("trial court") convicted Daniel

Lee Bowman ("Bowman") on eight counts of distribution of a Schedule II narcotic to a minor and

one count of misdemeanor obstruction of justice.  On appeal, Bowman contends that the trial court

erred: 1) by failing to excuse a particular juror from the jury venire for cause; 2) by adopting

sentencing guideline worksheets that imposed eight separate mandatory minimum sentences to run

consecutively to each other; and 3) by linking the trial court's finding that Bowman had failed to

accept responsibility for his crimes to Bowman's decision to plead not guilty and proceed with a

jury trial.  Since we disagree in part and agree in part, we affirm Bowman's convictions but remand

for resentencing.

_____

* This opinion is not designated for publication.  *See* Code § 17.1-413.

# I. Background[1]

In 2021, Bowman was indicted on 13 counts of distributing a Schedule II controlled substance to a minor, B.A.,[2] under Code § 18.2-255(A)(i). In addition, Bowman appealed his previous misdemeanor conviction for obstruction of justice under Code § 18.2-460 to the circuit court for a trial de novo. Bowman requested a jury trial on all charges after pleading not guilty. His jury trial on all charges was scheduled to commence on October 7, 2021.

On the morning of trial prior to commencement of voir dire, Juror 5 indicated in writing on the juror attendance report that both her name and address had changed after receiving her notice of jury service. The attendance report reflected a changed surname and that her new address was outside of Carroll County in adjacent Grayson County.[3] The court clerk advised both the trial court and counsel for the parties of the name change but not the change of address prior to the commencement of jury selection. When asked during voir dire, Juror 5 affirmed that she had lived in Carroll County for the previous six months and in Virginia for the past year. Juror 5 further expressed during questioning that she had no interest in the outcome of the case, had no bias or prejudice against either party, and could give a fair and impartial trial based on the law and the evidence presented at trial. Juror 5 also confirmed that she understood that Bowman was presumed

---

[1] "On appeal, we recite the facts 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Konadu v. Commonwealth*, 79 Va. App. 606, 610 n.1 (2024) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). "Doing so requires that we 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021).

Additionally, "[t]o the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023).

[2] We use initials to protect the victim's privacy.

[3] Although there was no finding below that the address is in Grayson County, the parties agree that it is.

innocent until proven guilty and that the Commonwealth needed to prove his guilt beyond a reasonable doubt. Juror 5 was subsequently selected to serve on the petit jury and swore to "fairly deliberate and render a true verdict in accordance with th[e] evidence and also in accordance with the law pertaining to th[e] case." During deliberations following the jury trial, Juror 5 was selected by her fellow jury members as the jury foreperson.

At trial, B.A., who was 16 at the time of the alleged offenses, testified that she began using methamphetamine when she was between the ages of 10 and 12. B.A. further testified that in 2020 she had run away from home and began residing with Bowman.[4] B.A. also testified that she had spent a great deal of time with Bowman and that he was aware that she was only 16 when he permitted her to live with him. She further recalled the police coming to Bowman's apartment looking for her, but she hid behind a water heater.[5] B.A. further recalled that she stayed at Bowman's for approximately three days, used methamphetamine provided by Bowman each day,[6] and that he was "mad" when she left his apartment to stay with Susie Hill ("Hill"), a mutual acquaintance.

Hill testified that she had previously met Bowman through mutual friends. Hill further admitted to being a previously convicted felon and a former drug addict. Hill confirmed that she invited B.A. to stay with her and that Bowman was upset about it. Hill also testified that she had seen Bowman with methamphetamine, used it with him, and saw him give it to others.

---

[4] The record reflects that B.A. had recently been placed with a member of the community under an agreement with the local Department of Social Services when she ran away on July 29, 2020. B.A. further testified that she had met Bowman "a good couple of months" prior to when she ran away.

[5] She further testified that Bowman had told her to hide behind the water heater when the police or "anybody came."

[6] B.A. also testified that Bowman had given her methamphetamine five times before she ran away from home.

At the close of the Commonwealth's evidence, Bowman moved to strike 5 of the 13 charges for distributing a Schedule II controlled substance to a minor, contending that B.A. only testified that "she had done it five . . . times prior to her run[ning] away." In further support, Bowman asserted that the Commonwealth's evidence showed that B.A. and Bowman did not meet until April of 2021, whereas the indictments alleged that Bowman had distributed a Schedule II controlled substance to a minor ten times between January 1, 2021, and July 29, 2021. In response, the Commonwealth agreed that the evidence did not support 5 of the 13 counts and that they should be struck, because one of its witnesses "did not testify to what she testified to at preliminary hearing under oath." The trial court subsequently struck 5 of the 13 indictments for distributing a Schedule II controlled substance to a minor.

Bowman declined to present any evidence in his defense. The trial court then instructed the jury, both sides presented closing arguments, and the jury retired to deliberate. Following their deliberations, the jury convicted Bowman on eight counts of distributing a Schedule II controlled substance to a minor and one misdemeanor count of obstruction of justice. The trial court ordered a presentence report and set the case for a sentencing hearing.

During Bowman's initial sentencing hearing in February of 2022, the trial court reviewed the presentence investigation report, which contained Bowman's version of the events leading to his arrest and subsequent convictions. Bowman admitted that he knew the underage victim, B.A., and that he had previously smoked methamphetamine with her. Bowman also explained in the report that he "got an obstruction of justice [charge] because they said I hid her in a closet when the police came to look for her," however he added that "[a]ll of this was not true, nevertheless I was found guilty."

B.A. testified at the sentencing hearing that there was a "medium to high" number of people who routinely came to Bowman's residence and used drugs, including "young and older people,"

"[a]nywhere from [her] age on up." Hill testified that Bowman "always bragged about being with a lot of girls and showed pictures of them all the time." Hill further explained that the girls in the pictures looked "young."

The Commonwealth also read B.A.'s victim impact statement into the record. B.A. stated that when she first met Bowman, she "was on drugs." She explained that Bowman helped her obtain drugs, that being around him "made [her] addiction worse," and that she wished Bowman "would understand [her] pain."

Bowman testified on his own behalf that he had completed five years of probation for a charge arising out of Florida. He stated that he owned a construction business and employed about five men. He further advised the trial court that he had six sons, including one with whom he had a "rocky" relationship. Bowman admitted that after an incident in which Social Services became involved, he began using methamphetamine daily.[7] Bowman further claimed that being arrested "probably saved [his] life." Moreover, Bowman admitted to smoking methamphetamine with B.A., for which he was "very remorseful," and that he shared drugs, however, he denied ever selling drugs.

Carroll County Sheriff's Investigator Lineberry ("Investigator Lineberry") testified that when he asked Bowman why so many young people frequented his apartment, Bowman claimed that he was "doing a Bible study" and that he was trying to "be a positive influence and a role model for them." Investigator Lineberry further testified that during a search of Bowman's apartment, the police found stolen property from an unrelated case and a box of what appeared to be "homemade sex toys."

---

[7] Bowman also acknowledged that, prior to becoming involved with methamphetamine, he had "been addicted to pain pills for thirty . . . years."

The Commonwealth argued that the trial court should sentence Bowman to a total of 40 years of active incarceration, which equated to the mandatory minimum sentence for each conviction if the sentences ran consecutively. Bowman argued in mitigation that he did not have a lengthy criminal history, had raised six children, and had maintained consistent employment. He also contended that he had expressed remorse and regret for his actions before requesting that the trial court run all of his mandatory minimum sentences concurrently.

Although the Commonwealth acknowledged that the trial court had the discretion to run the mandatory minimum sentences concurrently "unless the statute specifically says otherwise," the Commonwealth urged the trial court not to run the sentences concurrently because the offenses involved a child victim. The trial court ruled that it did not have the "authority or discretion . . . to modify th[e] sentences below the five (5) year mandatory minimum on each" conviction before further stating that "[t]his probably would have been a lot different position had people made different decisions - acceptance of responsibility at an earlier time, that sort of thing." The trial court further noted that it would not "second-guess why that didn't happen," before adding that while the trial court appreciated and understood that everyone is entitled to a jury trial, "they do have consequences on the back end when things happen."[8] The trial court then sentenced Bowman

---

[8] In context, the trial court's remarks appeared as follows:

> This probably would have been a lot different position had people made different decisions - acceptance of responsibility at an earlier time, that sort of thing. The Court is not going to second-guess why that didn't happen, but, you know, when I look at acceptance of responsibility, I certainly don't do it after, you know, a lengthy jury trial and that sort of thing.
>
> Although I - the Court appreciates and understands every one . . . has a right to their trial - their jury trial - but they do have consequences on the back when things happen. This trial is not anything - it's not any more than the convictions upon which this jury found Mr. Bowman guilty. That's what he's found guilty and that's what he will be sentenced to.

to 80 years of incarceration on his convictions for distribution of a Schedule II controlled substance to a minor, suspending 40 years and imposing the remaining 40 years as mandatory minimum active sentences.[9]

On March 3, 2022, Bowman advised the trial court that he intended to move to modify his sentence.[10] In response, the trial court vacated its prior sentencing order "to provide sufficient time to hear" Bowman's motion. At the hearing on the motion to modify his sentence held on April 6, 2022, Bowman argued that the trial court did have the discretion to run his sentences concurrently contrary to the trial court's previous ruling. Specifically, he argued that "[t]here was language during the sentencing indicating that the Court did not feel like it had the authority to [run the sentences concurrently] without having proper authority proving it did" and asserted that the trial court did in fact have the discretion to run the sentences concurrently. The Commonwealth agreed that the trial court had discretion but noted that the guidelines would nevertheless recommend a forty-year sentence because, by default, "[y]ou have to run them consecutive." Moreover, the Commonwealth argued that consecutive sentences were appropriate in a matter involving a minor. Although the trial court agreed that it was permitted to run the sentences consecutively or concurrently and that generally the trial court would "give everybody the benefit of the doubt," the trial court added that if "you distribute drugs to children in this County, it's going to be a pretty severe consequence."

Bowman also requested that the trial court find that he had accepted responsibility for his crimes. Citing the fact that Bowman requested a jury trial, the trial court, although skeptical

---

[9] The trial court credited Bowman for time served and also sentenced him to six months' incarceration for obstruction of justice under Code § 18.2-460.

[10] The motion to modify is not in the record before this Court.

concerning the argument, nevertheless allowed counsel for Bowman to argue that point.[11]  In response, the Commonwealth contended that proceeding to a jury trial and creating a situation where B.A. had to testify after receiving therapy due to the trauma she experienced did not indicate acceptance of responsibility.  The Commonwealth further urged the trial court to review Bowman's statement in the pre-sentence report before crediting Bowman for accepting responsibility.

The trial court took Bowman's motion to modify under advisement, and during a subsequent hearing on May 25, 2022, opined that although Bowman only "came to drug use later in his life" and that his one felony charge "ha[d] some age on it," his statement in the presentence investigation report compelled him to conclude that Bowman had not accepted responsibility for his crimes.  The trial court further noted that B.A. had "suffered tremendously" because of Bowman's actions and that since there was one victim and "almost four (4) separate event days," the trial court would "treat the similar crimes with the offense dates together as a sort of a one (1) offense date." The trial court then announced a modified and reduced sentence from the bench before observing:

_____

[11] At the hearing on the motion, the trial court engaged in the following colloquy with Bowman's counsel:

> [The Court]: You think, when someone has asked for a jury trial and we empanel a jury and come in here and take a whole day or whatever time, that that's acceptance of responsibility?
>
> [Bowman's Counsel]: It was - he accepted responsibility . . .
>
> [The Court]: That's kind of a hard one . . .
>
> [Bowman's Counsel]: I do.  I don't think that that's not accepting responsibility.  I think we're required to . . .
>
> [The Court]: I'll let you argue that.  I mean, that's your prerogative to argue.  O. K.
>
> [Bowman's Counsel]: Yeah.  I do.  I do feel like that a person that exercises his Constitutional rights is not giving up his ability to be responsible and accept it, no matter what the outcome of the case is, whether he's acquitted or convicted.

"You know, I would tell you that this case would probably - my opinion might be different, had Mr. Bowman come directly in and entered pleas of guilty and taken responsibility. I know that's behind - water behind the bridge, but, you know, that's how I feel about it."

By final sentencing order entered July 18, 2022, Bowman's sentence was modified to ten years of incarceration with five years suspended on each of the eight drug charges. The trial court further held that three of the distribution sentences would run concurrently and that the remaining five sentences would run consecutively, resulting in a total sentence of 80 years with 40 years suspended, leaving Bowman with 30 years of active incarceration to serve. The trial court again sentenced Bowman to six months in jail for the obstruction of justice charge, this time modified to run concurrently with his sentences on the distribution charges. Bowman appeals.

## II. ANALYSIS

### A. *Standard of Review*

"[T]he decision to retain or exclude a prospective juror 'will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion.'" *Huguely v. Commonwealth*, 63 Va. App. 92, 121 (2014) (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)). This is "[b]ecause the trial [court] has the opportunity . . . to observe and evaluate the apparent sincerity, conscientiousness, intelligence, and demeanor of prospective jurors first hand." *Juniper v. Commonwealth*, 271 Va. 362, 400 (2006) (first alteration in original) (quoting *Pope v. Commonwealth*, 243 Va. 114, 123-24 (1987)).

"[W]hether a trial court erred by imposing a particular sentence is reviewed for an abuse of discretion." *Guest v. Commonwealth*, 78 Va. App. 187, 192 (2023). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v.*

*Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)).

B. *The trial court did not err by failing to remove Juror 5.*

Bowman contends that the trial court abused its discretion when the trial court failed to remove a juror from the jury venire who was not a resident of Carroll County at the time of trial. He further alleges that Juror 5 "should have raised her hand during the . . . voir dire, and been disqualified by the judge for no longer residing in the jurisdiction." Bowman does not allege any intentional irregularity, nor does he specify how Juror 5 being seated on the jury was unjust. Rather, he broadly asserts that because Juror 5 changed her address on the attendance report before trial, she did not meet the qualifications to sit on a petit jury in Carroll County. Hence, he requests a new trial "so that the ends of justice can be attained." Thus, although Bowman concedes that he did not present this issue to the trial court, he requests that this Court review the merits of the alleged error under the good cause exception to Rule 5A:18.

"One of the tenets of Virginia's jurisprudence is that trial counsel must timely object with sufficient specificity to an alleged error at trial to preserve that error for appellate review." *Perry v. Commonwealth*, 58 Va. App. 655, 666 (2011). "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18.

To the extent that Bowman asserts that the "good cause" exception to Rule 5A:18 applies, we note that "[t]he Court may only invoke the 'good cause' exception where an appellant did not have the opportunity to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry*, 58 Va. App. at 667 (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)).

Here, Bowman contends that he "was not given the opportunity to object" to Juror 5's inclusion as a juror—ultimately as foreperson. Here, Juror 5 listed a name change *and* a different address on the juror attendance report from which the jury venire list is determined prior to the jury voir dire commencing. Although the court clerk notified counsel in open court of the name change, the clerk failed to advise that a change of address had been indicated by Juror 5. As a result, the record here does not indicate that Bowman "had the opportunity to object but elected not to do so" based on the allegedly disqualifying nature of the change of address. *Perry*, 58 Va. App. at 667 (quoting *Luck*, 32 Va. App. at 834). In addition, Juror 5 indicated during voir dire that she had resided in Carroll County during the six months preceding the trial date and for one year in Virginia preceding the trial date.

However, even applying the good cause exception in this case, Bowman's assignment of error fails. "In Virginia, objections to the seating of jurors must be asserted '[p]rior to the jury being sworn.'" *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (alteration in original) (quoting Code § 8.01-352(A)). "Untimely objections are generally waived." *Id.* Code § 8.01-352 provides:

> A. Prior to the jury being sworn, the following objections may be made without leave of court: (i) an objection specifically pointing out the irregularity in any list or lists of jurors made by the clerk from names drawn from the jury box, or in the drawing, summoning, returning or impaneling of jurors or in copying or signing or failing to sign the list, and (ii) an objection to any juror on account of any legal disability; after the jury is sworn such objection shall be made only with leave of court.

> B. Unless objection to such irregularity or disability is made pursuant to subsection A herein and unless it appears that the irregularity was intentional or that the irregularity or disability be such as to probably cause injustice in a criminal case to the Commonwealth or to the accused and in a civil case to the party making the objection, then such irregularity or disability shall not be cause for summoning a new panel or juror or for setting aside a verdict or granting a new trial.

In addition,

> an "irregularity" is "intentional" under Code § 8.01-352 only *if the
> trial court clerk or trial judge* intentionally committed an act or
> adopted a practice that varies from the normal conduct of an action
> in making the "list or lists of jurors" or in "drawing, summoning,
> returning or impaneling" jurors or "in copying or signing or failing
> to sign the list."

*Clark v. Commonwealth*, 78 Va. App. 726, 774 (2023) (quoting Code § 8.01-352(A)). And "a

juror's failure to meet the statutory criteria for jury service is a 'disability' under Code

§ 8.01-352." *Id.* at 773. "The statute also emphasizes that either a timely objection or an

untimely objection permitted by leave of court is necessary for the court to grant a motion

'setting aside a verdict or granting a new trial.'"[12] *Bethea*, 297 Va. at 743 (quoting Code

§ 8.01-352(B)). "Even then, however, the objecting party must prove that the 'irregularity was

intentional' or that it would 'probably cause injustice' to one of the parties." *Id.* (quoting Code

§ 8.01-352(B)); *see also Clark*, 78 Va. App. at 773.

Here, Bowman does not allege nor does the record reflect any intentional irregularity on

the part of the trial court or the trial court clerk. *See Clark*, 78 Va. App. at 774-76. Indeed, even

after noting a different address on the juror attendance report, Juror 5 affirmed that she resided in

Carroll County for the six months before trial. In fact, although Juror 5 indicated that she resided

in a neighboring county on the date of the trial, she confirmed during voir dire that she would be

---

[12] To the extent that Bowman's failure to lodge an untimely objection with the trial court upon discovering Juror 5's disability precludes appellate review, we note that "in cases where the ability of the Court to review an issue on appeal is in doubt, we may 'assume without deciding' that the issue can be reviewed provided that this permits us to resolve the appeal on the best and narrowest grounds." *McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018). Here, by relying on controlling precedent, we find the merits of Bowman's claim to be the best and narrowest grounds of decision. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (noting that "[t]he 'best' answer to a legal question is the one with which the least number of jurists would disagree" and that "[t]he 'narrowest' answer to a legal question is the one affecting the least number of cases," and concluding that "most jurists would agree that a sua sponte holding would rarely qualify as the best answer to a legal question that neither litigant is asking").

fair and impartial, had no interest in the case, and would decide the case based on the evidence presented at trial. Hence, Bowman has not shown that seating Juror 5 "probably caused injustice," because nothing in the record demonstrates that Juror 5's presence on the jury or her status as foreperson was unjust. *Clark*, 78 Va. App. at 773; Code § 8.01-352(B). Accordingly, we find no abuse of discretion by the trial court when deciding to permit Juror 5 to serve as a juror during Bowman's trial.

C. *The trial court did abuse its discretion when sentencing Bowman.*

Bowman also asserts that "the trial court abused its discretion . . . by linking its decision not to run more of his mandatory sentences concurrently to [Bowman] exercising his 6th Amendment right to be tried before a jury of his peers." We agree.

At sentencing, "[a] trial court abuses its discretion when it (1) does not consider a 'relevant factor' that should have been given 'significant weight,' (2) *considers an 'irrelevant or improper factor' and gives it significant weight*, or (3) considers all relevant factors but makes a 'clear error of judgment' in weighing the factors." *Clark v. Commonwealth*, 73 Va. App. 695, 705 (2021) (emphasis added) (quoting *Dang v. Commonwealth*, 287 Va. 132, 146 (2014)). "While it is proper for a court to consider a defendant's 'present tense refusal to accept responsibility, or show remorse,' it may not be linked to his 'prior claim of innocence or not guilty plea or exercise of his right to remain silent.'" *Lawlor v. Commonwealth*, 285 Va. 187, 266 (2013) (emphasis omitted) (first quoting *Jennings v. State*, 664 A.2d 903, 910 (Md. 1995); and then quoting *Saenz v. State*, 620 A.2d 401, 407 (Md. Ct. Spec. App. 1993)).

Hence, it was improper for the trial court here to consider Bowman's decision to plead not guilty and proceed to a trial by jury. *See id.* at 266 n.33 ("[W]hether the defendant expresses remorse at sentencing is a proper factor for consideration and the trial court may weigh the credibility of any such expression, provided it does not consider the defendant's prior legal

- 13 -

positions when doing so.").  Next, we must consider whether the trial court gave that consideration "significant weight."  *Clark*, 73 Va. App. at 705 (quoting *Dang*, 287 Va. at 146).  Based on the trial court's repeated comments regarding Bowman's election to be tried by a jury instead of entering a plea of guilty,[13] we are compelled to conclude that it did.[14]  *See Lawlor*, 285 Va. at 266-67.  Thus, we remand for a resentencing hearing at which the trial court may only consider "all proper factors, and no improper ones."  *Id.* at 213 (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).[15]

### III.  CONCLUSION

For the foregoing reasons, we affirm Bowman's convictions but remand for resentencing.

*Affirmed in part, vacated in part, and remanded.*

---

[13] The record reflects that in determining Bowman's sentence, the trial court considered Bowman's decision to be tried by a jury on three separate occasions: 1) during Bowman's first sentencing hearing; 2) during the hearing on Bowman's motion to modify after the trial court vacated the initial sentence; and 3) during Bowman's final sentencing hearing after the trial court pronounced its sentence.

[14] "Code § 8.01-678 makes 'harmless-error review required in *all* cases.'" *Commonwealth v. White*, 293 Va. 411, 420 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 200 (2015)).  Here, the trial court's error was not harmless.  Although the trial court considered other evidence related to Bowman's purported acceptance of responsibility, "we cannot say with assurance that the trial court's sentencing decision was unaffected by" its consideration of an improper factor.  *Billups v. Commonwealth*, 274 Va. 805, 810 (2007).

[15] Bowman further asserts that the trial court "abused its discretion by receiving sentencing guidelines from the Commonwealth that were defaulted to read 40 . . . years for the low end, mid-point and high end sentences, reflecting five year mandatory minimum sentences for each of eight . . . felonies, run consecutively."  "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *White*, 293 Va. at 419).  Because we remand for resentencing, we do not reach the merits of this assignment of error.