COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Ortiz and Raphael

LAVAR QUIENTEZ DICKERSON

v.     Record No. 1112-21-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
AUGUST 2, 2022

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Holly B. Smith, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares, Attorney General; Robin M. Nagel, Assistant
Attorney General, on brief), for appellee.


Appellant Lavar Quientez Dickerson pleaded guilty to distribution of a Schedule I or II

controlled substance in violation of Code § 18.2-248. On appeal, Dickerson argues that the trial

court erred in accepting his guilty plea because he did not enter a "voluntary, knowing, and

intelligent plea to the charge." He also contends that the trial court abused its discretion in

sentencing him to ten years in prison, with six years and three months suspended. Because his

arguments are "wholly without merit," Code § 17.1-403(ii)(a); Rule 5A:27(a), we dispense with oral

argument and affirm the decision of the trial court.

## BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*,

295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

A grand jury indicted Dickerson for distributing a Schedule I or II controlled substance. Dickerson and his attorney subsequently completed a document entitled "Questions Asked the Defendant Before the Court Accepts a Plea of Guilty." Dickerson confirmed that he was indicted for cocaine distribution and that he fully understood the charge against him. He agreed that he had adequate time to discuss any possible defenses with his attorney, that he alone decided to plead guilty, and that he was entering the guilty plea "freely and voluntarily" because he was "in fact, guilty of the crime[] charged." He acknowledged that he was waiving certain rights by pleading guilty. He also acknowledged that the maximum punishment for the offense charged was forty years' imprisonment and a fine of $500,000. Finally, he confirmed that he understood all of the questions asked.

On August 2, 2021, Dickerson pleaded guilty to the charge of distributing a Schedule I or II controlled substance.[1] The parties presented the trial court with Dickerson's written responses to the colloquy questions. The trial court then conducted its own colloquy with Dickerson. Dickerson confirmed that he and his attorney discussed the charge, its elements, what the Commonwealth needed to prove, and any possible defenses. Dickerson stated that he was "freely and voluntarily" pleading guilty. The trial court reviewed with Dickerson certain rights he was waiving by entering the guilty plea. Dickerson responded that he understood that he could be incarcerated for up to forty years and fined up to $500,000. He said that he fully understood the charge against him, that he understood all of the questions the trial court asked, and that he did not have any further questions.

---

[1] Dickerson had not entered into a plea agreement, so there was no agreement as to sentencing.

The trial court accepted Dickerson's guilty plea, finding that it was made "freely, intelligently and voluntarily on the advice of [his counsel]" and that Dickerson understood "the nature of th[e] charge against [him] and the consequences of [his] plea."

The Commonwealth proffered the evidence it expected to present at trial. Investigator Alex Willetts of the Williamsburg Police Department conducted a drug investigation involving a confidential informant. The informant arranged to meet Dickerson in the City of Williamsburg to purchase a half ounce of cocaine. Before the meeting, Willetts provided the informant with a remote recording device and $1,050. Willetts searched the informant's vehicle to determine that it was free of drugs. The informant met with Dickerson while Willetts observed the transaction through the recording equipment. Willetts observed "the purchase and a transfer of what appeared to be . . . approximately a half ounce of a white powdery substance in a clear plastic baggy." The informant delivered the baggy to Willetts. The police stopped Dickerson and advised him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Willetts questioned Dickerson, who admitted that "he would occasionally sell cocaine in up to one-ounce quantities." Testing by the Virginia Department of Forensic Science confirmed that the substance consisted of 14.17 grams of powder cocaine.

Dickerson agreed to the Commonwealth's proffer and emphasized that he had "accepted responsibility for engaging in this particular action." The trial court found that the evidence was sufficient to convict Dickerson of distribution of a Schedule I or II controlled substance.

At the sentencing hearing, the Commonwealth advised the trial court that Dickerson had committed this offense while he was "on bond for some pretty serious felonious assaults in Chesterfield, and in fact, after he pled . . . no contest . . . to those charges." Dickerson emphasized that he had accepted responsibility for the charged offense by confessing "on the spot," waiving a preliminary hearing, and pleading guilty to the offense. He argued that the sentence recommended

by the discretionary guidelines was "excessive" and suggested "an active sentence of maybe about a year or maybe 15 months." The sentencing guidelines provided for an active sentence ranging from two years and nine months to four years and seven months, with three years and nine months as the midpoint. The Commonwealth urged a ten-year sentence with an active sentence within the sentencing guidelines. During allocution, Dickerson apologized and accepted "full responsibility" for his actions.

The trial court questioned Dickerson's acceptance of responsibility and his "representation of how [he] viewed the events." The court noted the seriousness of Dickerson's offense and his recent felony convictions in Chesterfield County. The court sentenced Dickerson to ten years' incarceration, with six years and three months suspended, for an active sentence of three years and nine months.

## ANALYSIS

### A. Preservation of Error

Dickerson argues that the trial court erred in accepting his guilty plea because he did not enter it voluntarily, knowingly, and intelligently. He contends that the trial court "erred in finding that [he] possessed the requisite mental competency to knowingly enter his plea" and the record "failed to establish that [he] was given notice of the elements of the offense" or that "[he] was aware of the various collateral consequences of his guilty plea." Dickerson concedes that he failed to move to withdraw his guilty plea with the trial court.

Dickerson acknowledges that he did not preserve this argument for appeal but asks that we address it under the good-cause and ends-of-justice exceptions to Rule 5A:18. He asserts that he "did not become aware of his inadequate understanding of the charge and its elements until after the sentencing hearing on October 6, 2021." By that time, "he had no opportunity to object to the unknowing, unintelligent, and consequently involuntary nature of the plea he had entered to the

charge against him." He asserts that this constitutes good cause for failing to preserve his assignment of error and that this Court should hear the error "to attain the ends of justice."

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Specificity and timeliness undergird the contemporaneous-objection rule . . . [']so that the trial judge . . . know[s] the particular point being made in time to do something about it.'" *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Although Rule 5A:18 provides two exceptions to this requirement—"for good cause shown or to enable this Court to attain the ends of justice"—neither exception applies here. The good-cause exception does not apply because Dickerson "had the opportunity to object but elected not to do so." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)). A defendant may move "to withdraw a plea of guilty . . . only before sentence is imposed or imposition of a sentence is suspended." Code § 19.2-296. But in order "to correct manifest injustice, the [trial] court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea." *Id.* After Dickerson entered his guilty plea, he had the opportunity to challenge it as not having been made knowingly, intelligently, or voluntarily. He had the opportunity to object at the sentencing hearing. And he could have moved to withdraw the plea up to twenty-one days after entry of the sentencing order. He failed to do so. The omission is conspicuous, as Dickerson filed other motions after his guilty plea, including a motion for appointment of counsel and motions to reconsider and modify the sentence. Because Dickerson had the opportunity to withdraw his plea but elected not to do so, the good-cause exception to Rule 5A:18 does not apply.

The ends-of-justice exception "is narrow and is to be used sparingly." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)). The exception "applies only in the extraordinary situation where a miscarriage of justice has occurred." *Id.* "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Id.* at 210 (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). The "exception requires proof of an error that was 'clear, substantial and material.'" *West v. Commonwealth*, 43 Va. App. 327, 338 (2004) (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 132 (1989)). "Virginia courts applying the ends-of-justice exception require a defendant to present not only a winning argument on appeal but also one demonstrating that the trial court's error results in a 'grave injustice' or a wholly inexcusable 'denial of essential rights.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546-47 (2013) (quoting *Brittle*, 54 Va. App. at 513). "Where the record does not affirmatively establish error, we cannot invoke the ends of justice exception to Rule 5A:18." *Smith v. Commonwealth*, 59 Va. App. 710, 724 (2012).

To fit within the ends-of-justice exception, Dickerson argues that his guilty plea was not made voluntarily, knowingly, and intelligently because the record fails to establish that he "was given notice of the elements of the offense." He claims that the record failed to establish that he was aware of the various collateral consequences of his guilty plea. And he contends that the trial court erred in determining that he possessed the mental capacity necessary to enter a guilty plea, or at least that it failed to exclude the possibility that he had diminished capacity.

Because a defendant who enters a guilty plea waives several rights, a "plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at

748. "[A]ccording due process to a defendant's entry of a guilty plea requires 'an affirmative showing [on the record] that the waiver embodied in the plea of guilty is intelligently, voluntarily and knowingly made.'" *Allen v. Commonwealth*, 27 Va. App. 726, 731 (1998) (second alteration in original) (quoting *Graham v. Commonwealth*, 11 Va. App. 133, 139 (1990)). In making that determination, "the truth and accuracy of representations made by an accused as to . . . the voluntariness of his guilty plea will be considered conclusively established by the trial proceedings, unless the [accused] offers a valid reason why he should be permitted to controvert his prior statements." *Anderson v. Warden of Powhatan Corr. Ctr.*, 222 Va. 511, 516 (1981).[2]

The trial court conducted an extensive colloquy with Dickerson, which affirmatively shows that his plea was entered knowingly, voluntarily, and intelligently. Dickerson acknowledged that he discussed with his attorney the charge against him, including its elements, what the Commonwealth was required to prove, and any possible defenses. He also stated that he was satisfied with his legal representation and that he had no questions for the trial court.

Dickerson finds no support in *Henderson v. Morgan*, 426 U.S. 637 (1976). In *Henderson*, there was "no discussion of the elements of the offense of second-degree murder, no indication that the nature of the offense had ever been discussed with respondent, and no reference of any kind to the requirement of intent to cause the death of the victim." *Id.* at 642-43. By contrast, Dickerson affirmed that he fully understood from his discussions with his counsel the charge against him and what the Commonwealth would have to prove for him to be found guilty.

We also reject Dickerson's claim that, because the record failed to show that he was informed of the various collateral consequences of his plea, his guilty plea was not knowingly,

---

[2] Rule 3A:8(b)(1) does not require that the trial court list each specific element for each offense. Rather, "[a trial] court may not accept a plea of guilty . . . without first determining that the plea is made . . . with an understanding of *the nature* of the charge and the consequences of the plea." Rule 3A:8(b)(1) (emphasis added).

voluntarily, and intelligently made. "For a guilty plea to be constitutionally valid, a defendant must be made aware of all the direct, but not the collateral, consequences of his plea." *Brown v. Commonwealth*, 297 Va. 295, 302 (2019) (quoting *Meyer v. Branker*, 506 F.3d 358, 367-68 (4th Cir. 2007)). "Future or contemplated, but uncertain, consequences are irrelevant to the validity of the guilty plea." *Id.* (quoting *People v. Williams*, 721 N.E.2d 539, 544 (Ill. 1999)). "Direct consequences have a definite, immediate and largely automatic effect on the range of the defendant's punishment. A consequence is collateral when it is uncertain *or beyond the direct control of the court*." *Id.* (quoting *Meyer*, 506 F.3d at 368).

Here, all of Dickerson's cited consequences are collateral. He claims that he did not know that his guilty plea would cause him to lose his right to vote, to serve on a jury, to be disqualified from receiving certain public benefits, to be disqualified from certain business and occupational licenses, to be barred from owning or possessing a firearm, and to be subject to deportation "if he was an immigrant with 'green card status' who had not yet acquired U.S. citizenship." Those consequences are collateral because the trial court has no direct control over them.[3]

Dickerson misplaces his reliance on *Padilla v. Kentucky*, 559 U.S. 356 (2010), which held that effective assistance of counsel under the Sixth Amendment requires that defense counsel inform a "noncitizen client that he faces a risk of deportation." *Id*. at 374. Dickerson does not allege such ineffective assistance of counsel here. Indeed, he does not even claim to be a "noncitizen." To the contrary, Dickerson said during the plea colloquy that he is "a U.S. citizen."

Dickerson also supports his ends-of-justice argument by claiming that the trial court "erred in finding that [he] possessed the requisite mental competency to knowingly enter his plea . . . or otherwise exclude the possibility that [he] was suffering from diminished capacity." After "hearing

---

[3] Moreover, his written-colloquy form told him that he would lose the right to vote and the right to own and possess a firearm.

evidence or representations of counsel for the defendant or the attorney for the Commonwealth," the trial court must order a competency evaluation if it finds "there is probable cause to believe that the defendant . . . lacks substantial capacity to understand the proceedings against him or to assist his attorney in his own defense . . . ." Code § 19.2-169.1(A). A trial court's decision not to order a competency evaluation is reviewed for abuse of discretion. *Johnson v. Commonwealth*, 53 Va. App. 79, 93 (2008). "[T]he diligence of defense counsel in seeking an evaluation represents a key factor in reviewing a circuit court's decision not to order such an assessment." *Id.* at 93-94.

Dickerson's suggestion of diminished mental capacity does not satisfy the ends-of-justice exception because he has failed to "affirmatively show that a miscarriage of justice has occurred." *Holt*, 66 Va. App. at 210 (quoting *Redman*, 25 Va. App. at 221). The trial court had no reason to order a competency evaluation because it lacked probable cause to find that Dickerson was mentally incompetent. *See* Code § 19.2-169.1; *Johnson*, 53 Va. App. at 93-94, 98-99. What is more, the record does not show that either Dickerson or his attorney ever questioned Dickerson's mental capacity or requested a competency hearing. To the contrary, Dickerson affirmed in his plea colloquy that he understood the charge against him, its elements, any defenses, what the Commonwealth had to prove, and that he had no questions for the trial court.

Because we conclude that the record shows that Dickerson's guilty plea was entered knowingly, voluntarily, and intelligently, we find no miscarriage of justice. So the ends-of-justice exception does not apply, and Rule 5A:18 bars our consideration of Dickerson's argument on appeal.

### B. Sentencing

Dickerson also argues that the trial court erred in sentencing him to ten years' incarceration with six years and nine months suspended. He says that the trial court "discount[ed] . . . mitigating factors and circumstances warranting mercy." He argues "that the sentence was so harsh and

disproportionate, considering the totality of the circumstances, that it should be set aside, and the matter remanded for a new sentencing hearing." He also claims that the trial court should have considered his decision to plead guilty and waive a preliminary hearing and the fact that this was his "first drug conviction and his first felony sentencing event."

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). Accordingly, we may consider only whether the sentence fell outside the statutory range. *See Smith v. Commonwealth*, 26 Va. App. 620, 626 (1998); *Valentine v. Commonwealth*, 18 Va. App. 334, 339 (1994). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

It was within the trial court's purview to weigh the mitigating evidence Dickerson presented. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. Such decisions "rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

Dickerson's active sentence of three years and nine months fell well short of the forty-year maximum permitted by Code § 18.2-248. Moreover, the trial court evaluated the mitigating evidence. The court noted its concern about "how [Dickerson] viewed the events [of the crime]." The trial court reviewed Dickerson's presentence report, which included that he also had committed

"very serious felonies" in Chesterfield County. After considering the evidence and arguments of the parties, the trial court imposed a sentence it deemed appropriate. Because that sentence fell within the statutory range, "our task is complete." *Thomason*, 69 Va. App. at 99.

Dickerson also argues that his sentence was disproportionate, but proportionality review is not available for cases like this one that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 653-54 (2011). We noted in *Cole* that the Supreme Court of the United States "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Id.* at 653 (quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (per curiam)). *Cf. Vasquez v. Commonwealth*, 291 Va. 232, 243 (2016) (rejecting Eighth Amendment challenge to 133-year active sentence because the sentence was imposed for "eighteen separate crimes").

## CONCLUSION

In sum, Rule 5A:18 bars us from considering Dickerson's argument that his guilty plea was not entered knowingly, voluntarily, and intelligently. And we find that the trial court did not abuse its sentencing discretion because the sentence was within the statutory range.

*Affirmed.*